(No. 19062.—)
MARY GRUNER *et al.* Defendants in Error, *vs.* MATILDA RICE *et al.* Plaintiffs in Error.

*Opinion filed December 20, 1928.*

Nelson B. Layman, (L. A. Cranston, of counsel,) for plaintiffs in error.

W. O. Edwards, for defendants in error.

Mr. Justice Farmer delivered the opinion of the court:

Defendants in error filed a bill in the circuit court of Perry county to construe the will of Philip Gruner. The defendants to the bill were five of the children of the testator by a former marriage, two of whom were acting in the capacity of trustees, having been appointed by the court under the will of the testator. Gruner died October 14, 1904, leaving surviving him three sons and two daughters. Charles Gruner, one of the sons, died November 10, 1925, leaving a widow and seven children. Two of the children and the widow, who was their mother, are the complainants in the bill in this case. Only the sixteenth paragraph of the will of Philip Gruner is sought to be construed. By that paragraph he devised to four of his children an equal one-fifth part of his estate, and devised to his son Philip A. Gruner and his son-in-law Henry R. Schulze a one-fifth part of the estate as trustees for the benefit of his son Charles "and of his heirs." Paragraph 16 required the trustees to pay the income of the one-fifth part of the estate to his son Charles. "Upon the decease of my said son, Charles, the said trust estate held for his use, shall be at once conveyed and delivered to the lawful heirs-at-law of the said Charles,

to them, and to their heirs and assigns forever, it being my intention and desire that the said interest shall be held for the use of said Charles, during his natural life, by the said trustees, surviving or acting trustees as aforesaid, and that the same shall descend to and be vested in his lawful heirs at his decease." The provisions of the sixteenth paragraph of the will we have quoted are typical and not different from the other provisions of said paragraph, which is a rather lengthy paragraph. The trustees named accepted the trust and managed the devise to Charles Gruner until the death of the trustee Philip A. Gruner in 1905 and the resignation of the son-in-law, Schulze, in 1924. At that time the circuit court appointed two other sons as trustees, who accepted the appointment to carry out the trust provisions of the will. After the death of Charles, which, as we have said, occurred November 10, 1925, a controversy arose between his children and his widow as to whether she was entitled to dower in the one-fifth part of the property devised in trust to Charles and his heirs. On the 25th day of February, 1926, a little more than three months subsequent to the death of Charles, his widow filed a relinquishment of the right to have dower assigned to her and elected to take in lieu of dower a one-third interest, as provided by statute. At that time there had been no administration granted upon the estate of Charles, and so far as we are able to discover there never has been any administration up to the present time.

The court construed the will of Philip Gruner to have devised to his son Charles an equitable life estate in the one-fifth of the testator's property, and that by operation of the rule in *Shelley's case* Charles became vested with an equitable estate of inheritance in fee, and that upon his death his widow, Mary Gruner, became entitled to dower in his estate, which she had waived in writing and elected to take in lieu thereof an estate in fee, and she thereby became entitled to an estate in fee in the lands devised her husband by his father, in lieu of dower. The decree further found that

the seven children left by Charles were the owners each of an undivided one-seventh of two-thirds of the land devised to Charles by his father, Philip. Two of the children of Charles surviving him were the children of his widow, who was his second wife. This writ of error was sued out by five of Charles' children and the trustees.

Plaintiffs in error argue that by the use of the term "heirs" in Philip Gruner's will he meant children. It is admitted that the word "heirs," in its technical sense, means those whom the law appoints to take intestate estate. The object of the construction of a will is to give effect to the intention of the testator where that intention is not in violation of any rule of law or public policy, and it has been held that the word "heirs" may be construed to mean children where the context clearly indicates that such was the intention of the testator. Unless it appears from the whole instrument that the word "heirs" was not used in its technical sense but was used to designate children it will be construed in its technical sense. There is not anything in the will, or any part of it, to indicate that the testator meant children by using the term "heirs" and did not mean heirs in the technical sense. The intention of the testator in the use of the language of the will must be determined from the language itself, and not from any conjecture that the testator used the language to express an intention or meaning he had in his mind but which he did not express in the will. *Lomax* v. *Lomax,* 218 Ill. 629; *Karsten* v. *Karsten,* 254 id. 480; *Crabtree* v. *Dwyer,* 257 id. 101; *DuBois* v. *Judy,* 291 id. 340; *Peacock* v. *McCluskey,* 296 id. 87.

Construing the word "heirs," as used in the will, in its ordinary or technical sense the devise falls within the rule in *Shelley's case,* and Charles Gruner was vested by the will of an equitable estate of inheritance in fee in the land devised to him. The rule in *Shelley's case* is a rule of property and will be given effect without regard to the intention of the testator. It has been the subject of frequent con-

sideration in many cases in this State, from *Baker* v. *Scott,* 62 Ill. 86, down to *Beall* v. *Beall,* 331 id. 28. For this reason we do not think it necessary to enter upon a discussion of the rule. A reading of the decisions will disclose that every element is present in the devise necessary to bring it within the rule in *Shelley's case,* and anything that we might say in addition to what we have already said would be a mere repetition.

It is further suggested by plaintiffs in error that the statute provides that when there is a widow and surviving children, the widow, to be entitled to an estate in fee in lieu of dower, must file her election within a year after letters of administration are issued. In this case the waiver of dower and election to take one-third of the estate in fee was filed approximately three months after the death of Charles Gruner but before any administration had been taken out on his estate, and, as we have before stated, it does not appear that any administration has yet been taken out. In the instant case the waiver and election were filed within approximately three months after the date of the death of Charles. In an ordinary case administration will be granted on the deceased's estate soon after his decease, and where the widow files her renunciation of dower and elects to take in fee a third of the estate of her husband within a year after his death, such election will be treated as good even though no letters of administration have been granted. The widow's right cannot be made to depend upon letters being issued on the intestate estate, and if no letters are issued her relinquishment and election will be as valid if filed within a year after the death of the deceased as if filed within a year after letters of administration have been granted, in case letters were granted.

We are of opinion the decree was in accordance with the law, and it is affirmed.

*Decree affirmed.*