[1] Reported in 105 P.2d 11. [4] See 105 A.L.R. 1182; 1 Am. Jur. 656; 1 R.C.L. 614 (1 Perm. Supp. 32).
Ernest F. Bauer and Edna Albee Bauer intermarried June 10, 1919. Their son, George W., was born during the month of September, 1920. June 26, 1926, by decree entered by the superior court for King county, Mr. and Mrs. Bauer were divorced. September 2, 1927, George W., the minor child of the parties, with the written consent of both of his parents, was legally adopted by his maternal grandmother, and his name changed to George W. Albee.
Ernest F. Bauer, who had for some years prior thereto lived in Alaska, returned to Seattle during the month of October, 1938, and resided in Seattle until his death, which occurred December 3, 1938. Mr. Bauer left a paper writing, bearing date August 16, 1937, which document was, on application of Mr. Bauer's brother, Ray W. Bauer, by the superior court for King county, by decree dated December 14, 1938, admitted *Page 167 
to probate as the last will and testament of Ernest F. Bauer.
Ray W. Bauer, to whom letters testamentary were regularly issued, published notice to creditors, filed his inventory of the property of the estate, and after the expiration of six months, filed his final account as executor and petition for distribution. The executor tendered to George W. Albee, the son of the deceased, one dollar, upon the theory that the son was entitled to receive that amount under his father's will. The tender was refused, and the minor, through his guardian adlitem, appeared in the probate proceeding and moved to set aside the probate of the alleged will, upon the ground that the same had been improvidently and fraudulently admitted to probate. The minor also filed an answer to the final account and petition for distribution, alleging that he was the son and only heir of the decedent; that he was not named or provided for in the alleged will; that, as to him, his father died intestate; and that he, as his father's only child, was entitled to have the residue of the estate remaining in the hands of the executor distributed to him. The executor contends that his brothers, his sister, and George W. Albee should receive one dollar each, and that he should receive the balance of the estate.
After a hearing, the trial court denied the minor's motion to vacate the decree admitting the alleged will to probate, ruled that the deceased, as to his son, died testate, and approved the executor's final account and entered a decree of distribution, as prayed for in the executor's petition, distributing one dollar to the son of decedent and awarding the residue of the property of the estate to the executor, Ray W. Bauer, holding that he was entitled to receive the same under the last will and testament of the decedent.
From the order and decree entered by the trial court, *Page 168 
the minor, by his guardian ad litem, has appealed, assigning error upon the refusal of the trial court to vacate the decree admitting the will to probate, and upon that portion of the decree refusing to distribute the estate to appellant and awarding the same to the deceased's brother, Ray W. Bauer.
December 14, 1938, Ray W. Bauer filed his petition for probate of will, submitting therewith a document which he alleged was the last will and testament of his late brother, Ernest F. Bauer. A facsimile of this document follows: *Page 169 
[EDITORS' NOTE: DOCUMENT IS ELECTRONICALLY NON-TRANSFERRABLE.] *Page 170 
After alleging the death of Mr. Bauer in Seattle, King county, Washington, and that he left estate therein of the probable value of five thousand dollars, the petition sets forth that, during the month of August, 1937, the decedent was in the employ of the United States government, stationed at Nome, Alaska, and that, on August 16th, he executed his last will and testament; that at that time the laws of the territory of Alaska provided that:
"Olographic wills, with or without attestation, shall be admitted to probate the same as other wills and be proved in the same manner as other private writings." Comp. Laws of Alaska, 1933, § 4624;
and that the document was a valid will under the laws of Alaska. Paragraph 2 of the petition alleges "that said deceased left surviving the following as his only heirs, devisees and legatees," then naming the three brothers and one sister mentioned in the so-called will.
On the day the petition was filed, a decree was entered admitting the document to probate as the last will and testament of Ernest F. Bauer. This decree, inter alia, states:
"That said will was duly executed as an olographic will without attestation in accordance with section 4624 of the Compiled Rules of Alaska, 1933."
A minute entry, under date December 14, 1938, made by the clerk of the probate department of the superior court, entitled in the estate of Ernest F. Bauer, deceased, reads as follows:
"This matter comes on for hearing this day upon petition for probate of olographic will, the petitioner appearing in person and by counsel Bayley Croson.
"Ray W. Bauer is sworn and examined. Bond set at $2000.00.
"Petition granted." *Page 171 
Rem. Rev. Stat., § 1380 [P.C. § 10049], referring to the probate of wills, contains the following:
"All testimony in support of the will shall be reduced to writing, signed by the witnesses, and certified by the judge of the court."
No such certificate was filed, and the record discloses nothing concerning the evidence which was introduced in support of the alleged will.
[1] Concerning the question of whether the document is a holographic will, the following authorities indicate that it is not.
In 28 R.C.L. 161, § 116, is found the following:
"A holographic will, which in a number of jurisdictions is a recognized kind of testamentary instrument, is one entirely written, dated, and signed by the testator in his own handwriting. The validity of such a will owes its origin to the fact that a successful counterfeit of another's handwriting is exceedingly difficult, and that therefore the requirement that it should be in the testator's handwriting would afford protection against a forgery of this character. . . . The formalities expressly prescribed by law for the execution of holographic wills must, however, be strictly observed or the will is void. The omission of any of them will not be overlooked on the ground that it is beyond question that the paper was executed by the decedent as his will while he possessed abundant testamentary capacity and was free from fraud, constraint, or undue influence, and there is no question of his testamentary purpose and no obstacle to carrying it into effect had his will been executed in the manner prescribed by the statute. A will is not holographic if any part of it, necessary to render the instrument complete or affecting its meaning, is not in the handwriting of the testator; and accordingly a typewritten instrument is not recognized as constituting such a will. So a will is not holographic when written by the testator on a stationer's blank form, a part of which is printed, and the courts will not permit any evasion of the requirement or allow the probate of only that portion written by the testator." *Page 172 
The following texts are to the same effect. Thompson on Wills (2d ed.), chapter 3, § 29; 1 Page on Wills, §§ 363, 367. It seems to be the general rule that a holographic will must be entirely in the handwriting of the testator, and cannot be written in typewriting, nor can words which are part of the dispositive portions be inserted by the use of a rubber stamp. It is also stated that a will which is written in part on a printed form is not a holograph, if the written portions are not complete in themselves. 1 Schouler on Wills (6th ed.), §§ 9, 427-8-9; 68 C.J. 719, §§ 402-3. It has been held that to constitute a valid holographic will, every word must be in the handwriting of the testator. In re Thorn's Estate, 183 Cal. 512, 192 P. 19.
Appellant contends that the document which the court admitted as a holographic will shows beyond question on its face that it cannot on any theory be classed as such, and that the decree purporting to admit the writing to probate as a will is a mere nullity, and should be vacated as such. Whether or not the document can, on any theory, be said to be a holographic will, or any will, may well be doubted, but we find it unnecessary to determine this question, in view of our opinion on the questions raised by appellant under his second assignment of error. This also renders it unnecessary to discuss respondent's contention that appellant's attack on the decree admitting the document to probate as a will is in law a will contest, and was not instituted within the time limited by law for commencement of a will contest.
We shall now consider the proposition advanced by appellant that he is not "named or provided for" in the document which was admitted to probate as his father's will, and which we shall hereinafter refer to as the will, and that he therefore, as his father's sole *Page 173 
heir, should receive, as distributee, the entire residue of his father's estate.
[2] In the first place, it should be noted that respondent admits that appellant is the son, and the only child, of Ernest F. Bauer, deceased, and that, notwithstanding appellant's adoption by his maternal grandmother, appellant would nevertheless inherit from his father, unless disinherited by a will, under the rule laid down In re Roderick's Estate,158 Wn. 377, 291 P. 325, 80 A.L.R. 1398.
Rem. Rev. Stat., § 1402 [P.C. § 10029], reads as follows:
"If any person make his last will and die leaving a child or children or descendants of such child or children not named or provided for in such will, although born after the making of such will or the death of the testator, every such testator, as to such child or children not named or provided for, shall be deemed to die intestate, and such child or children or their descendants shall be entitled to such proportion of the estate of the testator, real and personal, as if he had died intestate, and the same shall be assigned to them, and all the other heirs, devisees and legatees shall refund their proportional part."
Appellant was not named in his father's will. The question is: Was he "provided for" by that portion of the document written in longhand by the testator, reading as follows: "Ray W. Bauer to make what disposition he see fit, with at least one dollar to each heir. E.F. Bauer."
[3] The rule is well established that, in construing a will, the document must be construed according to its terms, and if it contains ambiguous language, extrinsic circumstances may be shown, not for the purpose of enabling a court to make a will for the testator, nor for the purpose of enlarging or changing the will, but simply to enable the court to determine the true meaning *Page 174 
of the testator, in expressing which he used language which is ambiguous. The desire of the testator must be ascertained and determined from the will itself. Webster v. Thorndike, 11 Wn. 390,39 P. 677; Shufeldt v. Shufeldt, 130 Wn. 253,227 P. 6; In re McNulta's Estate, 168 Wn. 397, 12 P.2d 389;Roots v. Knox, 107 Ore. 96, 212 P. 469, 213 P. 1013; 28 R.C.L. 268, §§ 243-4.
[4] The will here in question is manifestly an usual document, and difficult to construe. In the second paragraph, the testator appoints his brother Ray "Seattle administrator and main heir." By the handwritten words near the center of the will, over his signature, the testator directed that his brother Ray dispose of the property of the estate as "he see fit," etc. These two portions of the will contain the only intimations therein that the testator bequeathed or devised property to anyone.
The testator carefully noted that his parents were dead, and then named his brothers and his sister, with their respective addresses. Apparently as an afterthought, the testator added the words, pen written, above referred to, alongside the names of his brothers and sister. There is not the least intimation in the document that the testator had a child. Before the writing of the will, his son had been adopted, with his father's consent, by the boy's maternal grandmother, and by this act the ordinary rights of the father to the custody of his son and to the exercise of authority and control in the upbringing of the child had been taken from the father and vested in another. Under the law, however, there was reserved to the child the right to inherit from his natural parents, unless prevented from taking by a valid testamentary disposition by such parent of his property.
In the case of Gehlen v. Gehlen, 77 Wn. 17, *Page 175 137 P. 312, this court considered the effect of § 1402, supra, and overruling at least portions of some of its prior decisions, held that a testator might in his will refer to his children as a class, without naming each child separately. We quote from the opinion the following paragraph, as stating the rule laid down by the court:
"It seems to us more consonant with the obvious purpose of the statute to hold that the naming of the children as a class, whether for the purpose of providing for them or for the purpose of disinheritance, when coupled with language conveying either intention, is such naming as to show that no child has been unintentionally overlooked, to avoid which contingency was the sole purpose of the statute. So far as any of our former decisions may be construed as holding the contrary, they are hereby overruled."
In the earlier case of Purdy v. Davis, 13 Wn. 164,42 P. 520, it was held that a reference in the will of a wife "`to any one or more children that may be born to me before my demise'" was not sufficient to exclude from inheritance a child who had been born prior to the date of the execution of the mother's will. In its opinion, the court quoted from one of its prior decisions, and, in the Gehlen case, attention is called to the fact that the language so quoted was "unnecessarily broad as applied to the language of the will there under consideration." The court, however, in the Gehlen case, expressed the view that the Purdy case was correctly decided. The court, in theGehlen case, also observed that
"A will, in the absence of an expressed contrary intention, reads as of the date of the death of the testator; hence, what is said in this opinion has no application to posthumous children."
In the Purdy case, then, the court held that a reference "`to any one or more children that may be born to *Page 176 
me before my demise'" did not include a child living at the time the will was executed, and in the Gehlen case, the court expressly excluded from the scope of the opinion a posthumous child.
This court, In re Harper's Estate, 168 Wn. 98,10 P.2d 991, 15 P.2d 1119, relied upon by respondent, construing a will containing the following paragraph:
"`In case any child or children shall hereafter be born to me, I bequeath to each such child the sum of five dollars, and in the event any person shall contest this will or attempt to establish that he or she is entitled to any portion of my estate or to any right as an heir to me, I hereby give and bequeath to such person the sum of five dollars,'"
held that a daughter of the testator who was living at the time of the execution of the will was deprived of the right to inherit, by the language quoted. In the cited case it appears that the testator knew of the existence of his daughter, who was the claimant in the action, although he had been for many years divorced from the mother, and had not seen his child for many years. In his will, Mr. Harper showed that he was aware of the fact that children might later be born to him. In the same paragraph he referred to any person who might attempt to claim any portion of his estate as an heir. In the opinion, this court quoted from the opinion of the supreme court of California, Inre Hassell's Estate, 168 Cal. 287, 142 P. 838, relied on here by respondent. By the will before the supreme court of California, in the case cited, it appeared that a father named one son as legatee under the will. Following this bequest, the testator used the following language: "`Heirs not herein mentioned has been omitted by me with full knowledge.'" It was held that the word heirs included children not otherwise named or provided for. The court might well have concluded that, *Page 177 
having in the will named and provided for one child, the language above quoted necessarily referred to the testator's other children.
In the Harper case, this court also quoted the following from the supreme court of Missouri:
"`Whenever the mention of one person, by a natural association of ideas, suggests another, it may reasonably be inferred that the latter was in the mind of the testator and was not forgotten or unintentionally omitted.' Hockensmith v. Slusher,26 Mo. 237; Fugate v. Allen, 119 Mo. App. 183, 95 S.W. 980."
In the case at bar, it cannot be held that the mention of the brothers and sister by any natural association of ideas would suggest any thought of the testator's son.
Section 1402 must be given effect by the courts. The court may be thoroughly convinced that as matter of fact a parent, for good and sufficient reasons, desired to disinherit a child or children, but nevertheless such child or children will inherit as though the parent died intestate, unless named or provided for in the will. In the case at bar, the testator may have considered that his son was no longer his child, and may have, naturally enough, desired that his brother, with whom he had evidently been on most affectionate terms, and who had been kind to him, should be the object of his bounty; but appellant's rights must be determined regardless of all these possibilities, and they must be determined from the will alone.
Respondent cites the opinion of the supreme court of Illinois in the case of Gruner v. Rice, 333 Ill. 112, 164 N.E. 154. The case cited did not concern a pretermitted child, the question to be determined being whether or not a bequest by a father in trust for his son and for the benefit of the son's heirs, upon the death of the son, went to the son's children alone, or to his *Page 178 
wife and his children, who were in fact his heirs. It was contended that the testator, by the use of the term heirs, meant his son's children only. In deciding the question, the court said:
"It is admitted that the word `heirs,' in its technical sense, means those whom the law appoints to take intestate estate. The object of the construction of a will is to give effect to the intention of the testator where that intention is not in violation of any rule of law or public policy, and it has been held that the word `heirs' may be construed to mean children where the context clearly indicates that such was the intention of the testator. Unless it appears from the whole instrument that the word `heirs' was not used in its technical sense but was used to designate children it will be construed in its technical sense. There is not anything in the will, or any part of it, to indicate that the testator meant children by using the term `heirs' and did not mean heirs in the technical sense. The intention of the testator in the use of the language of the will must be determined from the language itself, and not from any conjecture that the testator used the language to express an intention or meaning he had in his mind but which he did not express in the will."
In the case at bar, by the use of the words "each heir," Mr. Bauer could not have intended his son alone. The testator had already referred to one brother as his "main heir." Respondent argues that the testator may have taken into consideration the possibility that his son might marry, beget children, and die, leaving children who would be the testator's heirs. This suggestion does not appear to us to be helpful. By the use of the words "each heir," the conclusion is inescapable that the testator was referring to his brothers and sister, regardless of whether or not he intended to include his son with them as one of his heirs.
In the case of Boman v. Boman, 49 Fed. 329, decided by the United States circuit court of appeals for the *Page 179 
ninth circuit, on appeal from the circuit court for the district of Washington, the court had before it for construction the will of George M. Boman. It appeared that Mr. Boman had two children residing in the state of Tennessee; that December 1, 1890, in King county, Washington, he made his will, containing the following:
"`Item 1st. I give, bequeath, and devise to each of my heirs at law the sum of one dollar. Item 2nd. I give, bequeath, and devise all the rest, residue, and remainder of my estate and property of every kind, real, personal, and mixed, and choses in action, to my beloved wife, Mary E. Boman.'"
In an action by the children, brought to recover their share of their father's estate, on the ground that they were not named or provided for in his will, the trial court sustained a demurrer to the complaint and dismissed the action. On appeal to the circuit court of appeals, the judgment of dismissal was reversed. The widow contended that the term heirs at law, as contained in the will, included the testator's children, and that they, being by that bequest provided for in the will, were not pretermitted. In the course of the opinion, the court said:
"His children were not designated as a class. No children were mentioned or specifically referred to. The words `heirs at law' may, it is true, be read to mean `children,' and should always be so construed if the context distinctly shows that the words were employed in that sense by the testator. The term `heirs at law,' however, in its general definition, includes many others. It is not limited to children. It may be used, and is often used, in cases where there are not children. It includes parents, brothers and sisters, etc. Who can tell by reading this will what particular heirs were in the mind of the testator at the time he signed the will? Does it clearly appear that it was his intention to provide for his children? *Page 180 
Is it manifest upon the face of the will that his children were not overlooked or forgotten? Certainly not. . . .
"The terms of the will, in order to show the intent of the testator to remember his children, or to make provision for them, should, under the statute, be clear, specific, definite, and certain. The presumptions of the law are all in favor of the children. These presumptions, in order to disinherit them, or to cut them off with a shilling or other nominal sum, can only be overcome by the use of words plainly indicating that the testator had his children in his mind at the time he made his will. This must appear either by express mention, or by necessary implication from the face of the will itself."
We are convinced, from careful study of the will now before us, that in the light of the authorities it cannot be held that appellant was included within the words "each heir," as contained in the will. The will contains no mention of appellant by name, nor does it contain the least reference to any child. It carefully names the brothers and sister. Construing the document by its four corners, we hold that appellant, George W. Albee, was not named or provided for therein, and being admittedly the son of the testator, is entitled to take as though his father had died intestate.
The judgment appealed from is reversed.
BLAKE, C.J., JEFFERS, and DRIVER, JJ., concur.