FILED
COURT OF APPEALS
DIVISION II

2015 AUG 18 AM 9: 02

STATE OF WASHINGTON

BY_____

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In the Matter of the Estate of<br><br>RAY MERLE BURTON<br><br>VICTOR WHITE,<br>　　　　　　　　Appellant,<br><br>v.<br><br>RICHARD DIDRICKSEN,<br>　　　　　　　　Respondent. | No. 46441-1-II<br><br><br><br>PUBLISHED OPINION |

MAXA, P.J. — Victor White appeals the trial court's order declaring that Ray Burton died intestate. RCW 11.12.020(1) states that wills must be signed by the testator and attested by two witnesses to be valid. White submitted evidence that Burton drafted and signed a document leaving his entire estate to White. The document was signed by one witness, but subsequently was lost. Burton later drafted a second, purportedly similar, document leaving his entire estate to White. That document was signed by a different witness. Richard Didricksen, Burton's legal heir, challenges the validity of the document under RCW 11.12.020(1). White argues that because two witnesses attested to Burton's testamentary intent to leave his estate to White, the documents together constituted a validly executed will under both strict compliance and substantial compliance theories.

We hold that Burton's testamentary documents do not constitute a valid will because Burton did not strictly comply with the requirement in RCW 11.12.020(1) that two witnesses attest to a will. We also hold that even assuming the substantial compliance doctrine applies to RCW 11.12.020(1), Burton did not substantially comply with the attestation requirement. Accordingly, we affirm the trial court's order declaring that Burton died intestate.[1]

## FACTS

Burton was a successful businessman with substantial assets, including two gold mines and a number of collectible cars. He allegedly was estranged from his living relatives and considered himself without family. Beginning in 2011, White helped the elderly Burton with a variety of tasks around his home. At some point, Burton allegedly began to prepare White to take over his business dealings after he died. Burton was hospitalized for pneumonia in 2013, and after his release White became his caretaker. Burton also received home nurse visits, and later hospice care. Throughout this time, Burton apparently had no will.

Shortly before he died, Burton handwrote and signed a document in red ink that was witnessed and signed by Lisa Erickson, a nurse. Erickson stated in a declaration that the document was for the purpose of Burton leaving his property to White. However, Erickson provided no testimony regarding the actual language used in that document, and she does not know what happened to the document.

---

[1] Didricksen also asks us to remand for ruling on several unresolved evidentiary objections. Because we affirm the trial court on other grounds, we need not and do not resolve those objections.

The day before he died, Burton handwrote another testamentary statement, again in red ink, on a blank portion of a preprinted healthcare directive form. He apparently needed some assistance from another nurse, Shirley Outson, to complete the writing. The final statement, which is difficult to read, appears to state:

> Thank[2] Victor White remain my caretaker til I go to sleep/die. The transfer of Gold Mines Montecarlo and Black Hawk One, all my collector cars and real estate located at 36619 Mountain Hwy E, Eatonville, WA 98320. I wish all my worldly possessions to go to Victor White.

Clerk's Papers at 13. Burton signed the form below the statement, as did Outson. But no other witness signed the document.

Burton died on January 25, 2014. White petitioned the trial court to recognize Burton's statement on the healthcare directive form as his will and to name White as personal representative of Burton's estate. Didricksen, Burton's cousin and legal heir, moved for an order declaring that Burton died intestate. The trial court granted Didricksen's motion, finding that Burton had not executed a valid will and therefore had died intestate. White moved for reconsideration, which the trial court denied. In denying White's motion for reconsideration, the trial court noted that White was free to pursue other legal remedies.

White appeals the trial court's order declaring that Burton died intestate and its denial of his motion to reconsider that order.

---

2 The exact word Burton used is difficult to decipher. Didricksen interprets the writing as stating "*That* Victor White remain my caretaker," Br. of Resp't at 3 (emphasis added), while White interprets the writing as stating "*Thank* Victor White remain my caretaker." Br. of Appellant at 12 (emphasis added).

## ANALYSIS

A.   STRICT COMPLIANCE WITH TWO WITNESS REQUIREMENT

White argues that the trial court erred by concluding that Burton died intestate because Burton complied with the requirements of RCW 11.12.020(1) and executed a valid will by creating two equivalent documents, each witnessed by a different person. We disagree.[3]

### 1.   Standard of Review

White challenges the trial court's legal conclusion that Burton's testamentary documents did not comply with RCW 11.12.020(1). We review a trial court's conclusions of law de novo. *In re Estate of Jones*, 152 Wn.2d 1, 8-9, 93 P.3d 147 (2004). We also review questions of statutory interpretation de novo. *Id.*

If the plain meaning of a statute is unambiguous, we apply that plain meaning as an expression of legislative intent without considering extrinsic sources. *Jametsky v. Olsen*, 179 Wn.2d 756, 762, 317 P.3d 1003 (2014). We give words their usual and ordinary meaning and interpret them in the context of the statute in which they appear. *Lake v. Woodcreek Homeowners Ass'n*, 169 Wn.2d 516, 526, 243 P.3d 1283 (2010).

### 2.   No Strict Compliance

RCW 11.12.020(1) requires that a will meet three basic formalities:

Every will shall be [1] in writing [2] signed by the testator or by some other person under the testator's direction in the testator's presence, and shall be [3] *attested by two or more competent witnesses*, by subscribing their names to the will, or by

---

[3] As a threshold matter, Didricksen argues that White's appeal is untimely because White has pending before the trial court related claims based on an alleged contract to devise. However, White asserted no contract claims in his petition, and the trial court expressly did not consider such claims. Accordingly, White's appeal is timely.

signing an affidavit that complies with RCW 11.20.020(2), while in the presence of the testator and at the testator's direction or request.

(Emphasis added).[4] Attestation by two witnesses always is required, and Washington does not recognize "holographic" wills.[5] *In re Brown's Estate*, 101 Wash. 314, 317, 172 P. 247 (1918).

White argues that the healthcare directive document is a valid will that complies with the two witness requirement. But that document was signed by only one witness. Therefore, on its face the document does not comply with RCW 11.12.020(1).

However, White argues that two witnesses did attest to Burton's will. White claims that they attested to the will in counterparts, separately signing two counterpart documents describing the same testamentary gift. White notes that nothing in RCW 11.12.020(1) prohibits executing a will in counterparts and that no Washington cases address this situation.

Even if we assume that witnesses can attest to a will in counterparts, the facts here show that Burton's witnesses did not sign counterpart documents. A "counterpart" is "one of two corresponding copies of a legal instrument;" a synonym is "duplicate." WEBSTER'S THIRD NEW INT'L DICTIONARY, 520 (2002). Here, there is no evidence that Burton prepared duplicative copies of any testamentary document. The witnesses stated that the two handwritten

---

[4] Only nuncupative wills – restricted to members of the armed forces or merchant marine and testamentary gifts of personal property amounting to $1,000 or less – are exempt from some of these formality requirements. RCW 11.12.025.

[5] A holographic will is a will handwritten, dated, and signed by the testator that may be validated on the basis of the testator's handwriting rather than any witness attestations. *See In re Bauer's Estate*, 5 Wn.2d 165, 171, 105 P.2d 11 (1940). In his petition to the trial court, White characterized the healthcare directive document as a holographic will. However, he does not argue on appeal that the document was valid as a holographic will and appears to recognize that Washington courts will not give effect to such wills.

testamentary documents both left Burton's entire estate to White, but neither witness stated that the documents were identical. Having one witness sign one testamentary document and having another witness sign a different testamentary document does not constitute signing one document in counterparts.

White also argues that the two documents must be viewed as a single integrated document that was signed by two witnesses. However, even if we assume that these documents somehow formed a single will, there were no witnesses that signed that will. Erickson and Outson each signed a portion of the will, but neither witnessed the "integrated" document.

Without evidence that two witnesses signed the same document, or at least identical duplicates of that document, White cannot show that Burton complied with RCW 11.12.020(1). Because only one witness signed the healthcare directive document – the only testamentary writing signed by Burton in the record – we hold that Burton did not strictly comply with the two witness requirement in RCW 11.12.020(1).

B.  SUBSTANTIAL COMPLIANCE

White argues that even if Burton did not strictly comply with the two witness requirement in RCW 11.12.020(1), we should conclude that he executed a valid will because he substantially complied with that requirement. We disagree.

1.  Legal Principles

Under the substantial compliance doctrine a party complies with statutory requirements by "satisfaction of the substance essential to the purpose of the statute." *Crosby v. Spokane County*, 137 Wn.2d 296, 302, 971 P.2d 32 (1999); *accord In re Santore*, 28 Wn. App. 319, 327, 623 P.2d 702 (1981). Courts may invoke the doctrine where a party has "substantially complied

with the requirements crucial to the underlying design intended by the legislature." *Murphy v. Campbell Inv. Co.*, 79 Wn.2d 417, 422, 486 P.2d 1080 (1971). However, some statutes are not susceptible to substantial compliance. *See, e.g., Medina v. Pub. Utility Dist. No. 1 of Benton County*, 147 Wn.2d 303, 317-18, 53 P.3d 993 (2002) (failure to comply with a statutory time limitation cannot be considered substantial compliance with the statute).

2. Substantial Compliance and RCW 11.12.020(1)

Washington courts have not applied the substantial compliance doctrine to the requirements of RCW 11.12.020(1). The only Washington case that even mentions substantial compliance with regard to RCW 11.12.020(1) is *In Re Estate of Ricketts*, 54 Wn. App. 221, 773 P.2d 93 (1989). In that case, the two witnesses to a will codicil did not subscribe their names to the codicil, but instead signed an affidavit that was stapled to it. *Id.* at 221. It was undisputed that this procedure did not strictly conform with the requirements of the version of RCW 11.12.020(1) then in effect.[6] *Id.* at 222. But the proponent of the will cited to a number of cases approving probate of wills despite irregularities in the placement of witnesses' signatures. *Id.* at 223.

The court in *Ricketts* discussed an Oklahoma case in which a will was admitted to probate when the testator signed at the end of the will near the bottom of the page and the subscribing witnesses signed on the following page. *Id.* The court stated that the record in that case "show[ed] much more substantial compliance with the requirements for execution than here present." *Id.* at 224.

---

[6] The legislature subsequently amended RCW 11.12.020(1) to allow this procedure. *See* LAWS OF 1990, ch. 79, § 1.

7

46441-1-II

*Ricketts* could be interpreted as accepting the notion that a testator can comply with RCW 11.12.020(1) through substantial compliance. However, the court did not specifically address that issue and in fact did not find substantial compliance. Instead, the court applied the requirements of RCW 11.12.020(1) and reversed the trial court's decision to admit the codicil to probate. *Id.* at 225.

Regardless of the significance of *Ricketts*, in order to assess the merits of the present case we assume without deciding that the substantial compliance doctrine applies to RCW 11.12.020(1).

3.    Substantial Compliance with Will Validity Provisions

Even assuming that substantial compliance is sufficient to satisfy the two witness requirement of RCW 11.12.020(1), Didricksen argues that there was no substantial compliance here. We agree.

The deficiency with Burton's testamentary documents was more than merely technical or procedural. The fundamental problem is that only Erickson saw and witnessed the first document and only Outson saw and witnessed the second, *different* document. If Erickson and Outson had seen an identical document but both signatures for some reason were not on that document, White's substantial compliance argument might be more compelling. But the fact that Erickson and Outson signed different documents precludes any finding of substantial compliance of the requirement in RCW 11.12.020(1) that two witnesses attest to the will.

Applying substantial compliance here also would work against the purposes of RCW 11.12.020. The statutory purposes underlying the formality requirements of the statute are "to ensure that the testator has a definite and complete intention to dispose of his or her property and

8

to prevent, as far as possible, fraud, perjury, mistake and the chance of one instrument being substituted for another." *In re Estate of Malloy*, 134 Wn.2d 316, 322-23, 949 P.2d 804 (1998). Here, the risk of mistake – if not fraud – would be high if we allowed probate of a testamentary document signed by only one witness when the second "witness" never saw that document.

We hold that under the facts of this case, Burton's healthcare directive document did not substantially comply with RCW 11.12.020(1).

C.  ATTORNEY FEES

Didricksen requests an award of reasonable attorney fees under the Trust and Estate Dispute Resolution Act (TEDRA), chapter 11.96A RCW. We decline to award Didricksen attorney fees.

Under RCW 11.96A.150, we have discretion to award reasonable attorney fees in cases involving a decedent's estate. *See Kitsap Bank v. Denley*, 177 Wn. App. 559, 580-81, 582, 312 P.3d 711 (2013). Although this is not a TEDRA case, the TEDRA attorney fee provision applies to " '[a]ll matters concerning the estates and assets of . . . deceased persons.' " *Id.* (quoting RCW 11.96A.020(1)(a)). In exercising our discretion, we "may consider any and all factors that [we] deem to be relevant and appropriate." RCW 11.96A.150(1).

Here, the evidence suggests that White is acting to enforce Burton's testamentary intent. And this is not a frivolous appeal – it raises a novel issue of law. Such appeals should not be discouraged by awarding attorney fees to an opponent if the court decides the issue in that opponent's favor. *Cf. Bale v. Allison*, 173 Wn. App. 435, 461, 294 P.3d 789 (2013) (declining to award attorney fees on appeal because the case involved a unique issue). Under the circumstances, we do not award Didricksen attorney fees on appeal.

46441-1-II

We affirm the trial court's order declaring that Burton died intestate.

_____
MAXA, P.J.

We concur:

_____
LEE, J.

_____
SUTTON, J.

10