FILED
COURT OF APPEALS
DIVISION II

2013 NOV -5  AM 8: 58

STATE OF WASHINGTON

BY_____
                DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| KITSAP BANK, a Washington Financial Institution, | No. 43282-0-II |
| Plaintiff, | |
| v. | |
| GAIL DENLEY, as PERSONAL REPRESENTATIVE OF THE CONSOLIDATED ESTATES OF HELEN M. CORRELL AND JAMES F. CORRELL, | PUBLISHED OPINION |
| Appellant, | |
| CHARLENA M. LANTERNO, | |
| Respondent, | |
| BANK OF AMERICA, a Washington Financial Institution, | |
| Defendant. | |

WORSWICK, C.J. — The Estate of Helen Correll (the Estate) challenges Charlena Lanterno's ownership of the funds from Helen Correll's checking account for which Lanterno was named the payable on death (POD) beneficiary based on a claim of undue influence. The trial court granted Lanterno's summary judgment motion. Because the trial court properly

determined that Lanterno was entitled to summary judgment as to the undue influence claim and did not abuse its discretion in awarding Lanterno costs and attorney fees, we affirm.

FACTS

In 1993, Lanterno was employed at Washington Mutual Bank (now J.P. Morgan Chase) where Correll was a customer. Correll and Lanterno became close friends because of the support Correll provided Lanterno after Lanterno's husband died. From 1999 to 2011, Lanterno and Correll had dinner approximately once a week and lunch on weekends. Lanterno also regularly visited Correll at her home.

Correll also maintained accounts at the Silverdale branch of Kitsap Bank. In November 2010, April Ihde, a senior financial service representative for Kitsap Bank, spoke to Correll over the phone. During the call, Correll told Ihde that she wanted to change the beneficiaries to her Kitsap Bank accounts because she wanted to make sure that the money was left to her friends whom she considered her family. Ihde told Correll what information the bank would need to change the beneficiaries on her accounts.

In December 2010, Ihde received a hand written letter from Correll in the mail. The letter stated that the prior beneficiary of the account, Correll's brother, Blaine Wiseman, should be removed and the beneficiary should be changed to Lanterno. The letter contained Lanterno's address, phone number, date of birth, and social security number. After receiving the letter, Ihde called Correll to confirm that she wanted Lanterno to be named the beneficiary of her account. Correll confirmed her request. Ihde noted that during the conversation Correll was of sound mind and was clear about her request. Correll reiterated that "she wanted to make sure that none of her family members received her money, and she wanted to make sure that it was left for her friends that have been there for her." Clerk's Papers (CP) at 94.

2

In December 2010, Lanterno dropped off a folder of documents at Kitsap Bank for Correll. The folder contained deposit slips, signature cards, and POD designations for three other of Correll's friends; however, Lanterno did not know the content of the documents at the time that she delivered the folder. At the same time, Lanterno dropped off a $400,000 check for Correll. Three hundred sixty-five thousand dollars was deposited into the Kitsap Bank account for which Lanterno was the POD beneficiary. The remainder of the money was split between three other accounts.[1]

In January 2011, attorney John Mitchell prepared a new will for Correll. Mitchell also prepared a durable power of attorney designating Lanterno as Correll's attorney in fact. Mitchell and his legal assistant met with Correll in person to sign the documents. At the time Mitchell met with Correll he observed, "She was completely coherent, knew exactly what she was doing." CP at 81.

Correll died on February 23, 2011. In April, Gail Denley, the personal representative of the Estate, informed Lanterno that she was the POD beneficiary of Correll's account. Until that time, Lanterno did not know that she was the designated beneficiary of Correll's account. On April 8, Lanterno met with Ihde about the account. Kitsap Bank issued Lanterno a cashier's check for the balance of the account: a little more than $400,000. Lanterno deposited the funds into her personal Bank of America checking account.

On April 14, Denley contacted Kitsap Bank and alleged that the funds in the checking account were improperly distributed to Lanterno because of fraud. Based on this allegation of

---

[1] The Estate does not challenge the POD beneficiaries to these three additional accounts.

fraud, Kitsap Bank filed a motion for a temporary restraining order under RCW 30.22.210[2] enjoining release of the funds, and later filed a complaint requesting a permanent restraining order. All parties stipulated to a restraining order freezing the funds until "authorized or directed by a court of proper jurisdiction." CP at 20. Lanterno filed an answer to Kitsap Bank's complaint. The Estate filed an answer and cross claim against Lanterno alleging a claim of undue influence.

Lanterno filed a motion for summary judgment alleging she was entitled to have the permanent restraining order dismissed and an order declaring that she was the legal owner of the funds because the Estate's claim to the funds was time barred by the statute of limitations in RCW 11.11.070 and the Estate's undue influence claim failed as a matter of law. The Estate responded that RCW 11.11.070's time bar did not apply and there were genuine issues of

---

[2] RCW 30.22.210 provides,
> (1) Nothing contained in this chapter shall be deemed to require any financial institution to make any payment from an account to a depositor, or any trust or P.O.D. account beneficiary, or any other person claiming an interest in any funds deposited in the account, if the financial institution has actual knowledge of the existence of a dispute between the depositors, beneficiaries, or other persons concerning their respective rights of ownerships to the funds contained in, or proposed to be withdrawn, or previously withdrawn from the account, or in the event the financial institution is otherwise uncertain as to who is entitled to the funds pursuant to the contract of deposit. In any such case, the financial institution may, without liability, notify, in writing, all depositors, beneficiaries, or other persons claiming an interest in the account of either its uncertainty as to who is entitled to the distributions or the existence of any dispute, and may also, without liability, refuse to disburse any funds contained in the account to any depositor, and/or trust or P.O.D. account beneficiary thereof, and/or other persons claiming an interest therein, until such time as either:
> (a) All such depositors and/or beneficiaries have consented, in writing, to the requested payment; or
> (b) The payment is authorized or directed by a court of proper jurisdiction.

4

material fact related to whether the designation of Lanterno as the designated POD beneficiary was void because of undue influence.

The trial court granted Lanterno's motion for summary judgment, ruling that the Estate's claim was time barred by RCW 11.11.070 and, alternatively, ruling that the Estate's undue influence claim failed as a matter of law.[3] The order dissolved the permanent restraining order and declared that Lanterno was the legal owner of the funds. The trial court also awarded Lanterno attorney fees under RCW 11.96A.150. The Estate appeals.

## ANALYSIS

### I. SUMMARY JUDGMENT STANDARD FOR UNDUE INFLUENCE

We review a trial court's order granting summary judgment de novo. *Torgerson v. One Lincoln Tower, LLC*, 166 Wn.2d 510, 517, 210 P.3d 318 (2009). Summary judgment is appropriate if the pleadings, affidavits, depositions, and admissions on file demonstrate the absence of any genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. CR 56(c). A material fact is one on which the outcome of the litigation depends in whole or in part. *Atherton Condo. Apartment-Owners Ass'n Bd. of Dirs. v. Blume Dev. Co.*, 115 Wn.2d 506, 516, 799 P.2d 250 (1990).

In a summary judgment motion, the moving party bears the initial burden of showing the absence of an issue of material fact. *See, e.g., LaPlante v. State*, 85 Wn.2d 154, 158, 531 P.2d

---

[3] Lanterno concedes that the trial court erred by applying RCW 11.11.070 to the present case. RCW 11.11.070 applies to "superwills" which purport to distribute nonprobate assets through a will. RCW 11.11.070 prevents the beneficiary designated in the will from making a claim against a beneficiary designated in the nonprobate asset. Because Correll's will does not designate a competing beneficiary to the nonprobate POD account, RCW 11.11.070 does not apply to the Estate's claim. Lanterno's concession is proper and we accept it. Accordingly, we do not further address the applicability of RCW 11.11.070.

299 (1975). "If the moving party is a defendant and meets this initial showing, then the inquiry shifts to the party with the burden of proof at trial, the plaintiff. If, at this point the plaintiff 'fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial,' then the trial court should grant the motion." *Young v. Key Pharm. Inc.*, 112 Wn.2d 216, 225, 770 P.2d 182 (1989) (footnote omitted) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.

The general principles of summary judgment are supplemented by additional principles when a party claims undue influence. The determination of undue influence is a mixed question of fact and law. *In re Trust and Estate of Melter*, 167 Wn. App. 285, 300, 273 P.3d 991 (2012). In *Melter*, Division Three of this court stated,

> When a challenged factual finding is required to be proved at trial by clear, cogent, and convincing evidence, we incorporate that standard of proof in conducting substantial evidence review. A party claiming undue influence must prove it by clear, cogent, and convincing evidence. *In re Estate of Eubank*, 50 Wn. App. 611, 619, 749 P.2d 691 (1988). When such a finding is appealed, the question to be resolved is not merely whether there is substantial evidence to support it but whether there is substantial evidence in light of the "highly probable" test. *In re Welfare of Sego*, 82 Wn.2d 736, 739, 513 P.2d 831 (1973); [*In re Estate of Riley*, 78 Wn.2d 623, 640, 479 P.2d 1 (1970)] (recognizing that "[e]vidence which is 'substantial' to support a preponderance may not be sufficient to support the clear, cogent, and convincing" standard). We still view the evidence and all reasonable inferences in the light most favorable to the prevailing party, *Woody v. Stapp*, 146 Wn. App. 16, 22, 189 P.3d 807 (2008) and, as in all matters, defer to the trier of fact on issues of credibility.

167 Wn. App. at 301 (second alteration in original). The same principle applies to summary judgment, and the party bearing the burden to prove the undue influence claim at trial must present sufficient evidence to make it highly probable that the undue influence claim will prevail

6

at trial. *In re Estate of Jones*, 170 Wn. App. 594, 603-04, 287 P.3d 610 (2012). A trial court may grant a summary judgment motion to dismiss if no rational trier of fact, viewing the evidence in the light most favorable to the nonmoving party, could find clear, cogent, and convincing evidence on each element. *In re Dependency of C.B.*, 61 Wn. App. 280, 285, 810 P.2d 518 (1991).

Here, the Estate bears the burden of proving undue influence by clear, cogent, and convincing evidence; Lanterno does not bear the burden of disproving the Estate's claim of undue influence. *Jones*, 170 Wn. App. at 606. The Estate argues that it has presented facts establishing a presumption of undue influence, and that the presumption of undue influence is sufficient to defeat a motion for summary judgment. We disagree. No rational trier of fact could find clear, cogent, and convincing evidence establishing a presumption of undue influence. And even assuming the Estate had presented a presumption of undue influence, that presumption was not sufficient to defeat summary judgment because the presumption was effectively rebutted. We affirm the trial court's order on summary judgment.

## II. PRESUMPTION OF UNDUE INFLUENCE

"Undue influence involves unfair persuasion that seriously impairs the free and competent exercise of judgment." *Jones*, 170 Wn. App. at 606 (citing *In re Infant Child Perry*, 31 Wn. App. 268, 272-73, 641 P.2d 178 (1982)). The court applies the rules for undue influence articulated in the *Restatement (Second) of Contracts* § 177 (1981) in will and gifts situations. *Jones*, 170 Wn. App. at 606-07. Based on the principles of the *Restatement*, courts have determined that certain circumstances give rise to a rebuttable presumption of undue influence. *Jones*, 170 Wn. App. at 608-09. The three most significant factors that can create a rebuttable presumption of undue influence are (1) a confidential or fiduciary relationship between the

beneficiary and the testator, (2) the beneficiary's active participation in the transaction, and (3) whether the beneficiary received an unusually large part of the estate. *Melter*, 167 Wn. App. at 298 (quoting *Dean v. Jordan*, 194 Wash. 661, 671-72, 79 P.2d 331 (1938)). Although these three factors are the most important, the court should also consider additional factors such as the age and mental or physical health of the testator, the nature of the relationship, the opportunity for exerting undue influence, and the naturalness of the will. *Melter*, 167 Wn. App. at 298 (quoting *Dean*, 194 Wash. at 671-72).

The Estate argues that it has met all three factors necessary to establish a presumption of undue influence. First, the Estate argues that Lanterno (1) had a confidential and fiduciary relationship with Correll because Lanterno was her banker and friend, (2) participated in the transaction because she delivered the signature card and $400,000 check to the bank, and (3) received a disproportionately large portion of Correll's estate.

A. *Confidential or Fiduciary Relationship*

The current case law regarding the presumption of undue influence as it relates to will and trust matters does not clearly distinguish between confidential and fiduciary relationships. Rather than determine whether the relationship is confidential or fiduciary, courts often examine whether the relationship gave the beneficiary the opportunity to influence the decisions of the testator. *See Melter*, 167 Wn. App. at 306-07; *Jones*, 170 Wn. App. at 608-09; *Liebergesell v. Evans*, 93 Wn.2d 881, 890, 613 P.2d 1170 (1980); *McCutcheon v. Brownfield*, 2 Wn. App. 348, 356-57, 467 P.2d 868 (1970). While this approach seems to comport with the underlying principles of undue influence, it is not the test developed by our Supreme Court. Our Supreme Court has specifically stated that confidential *or* fiduciary relationships may give rise to the presumption of undue influence. *Dean*, 194 Wash. at 672. Therefore, we take this opportunity

to clarify the definition of both confidential relationships and fiduciary relationships to better distinguish between the two.

Confidential relationships generally arise from personal relationships; in contrast, fiduciary relationships arise from professional relationships. Here, the Estate argues that Lanterno and Correll had both a confidential and a fiduciary relationship. If a confidential relationship existed between Lanterno and Correll, it would arise from their ongoing friendship. If a fiduciary relationship existed between Lanterno and Correll, it would arise from Lanterno's job as a bank teller at the Chase bank while Correll maintained accounts there. We examine each alleged relationship between Lanterno and Correll in turn.

1. *Confidential Relationship*

The Estate argues that Lanterno had a confidential relationship with Correll because Lanterno was a close friend of Correll's. Although Lanterno was Correll's close friend, a friendship, on its own, does not establish a confidential relationship. Based on the record, the Estate has not presented evidence that establishes the friendship between Lanterno and Correll was a confidential relationship.

"'A confidential relation exists between two persons when one has gained the confidence of the other and purports to act or advise with the other's interest in mind.'" *McCutcheon*, 2 Wn. App. at 357 (quoting RESTATEMENT (FIRST) OF RESTITUTION § 166d (1937). Family relationships are particularly likely to create confidential relationships. *McCutcheon*, 2 Wn. App. at 357. Other factors are also considered when determining whether a confidential relationship existed between the parties. For example, courts have found confidential relationships between family members when the testator lived with the beneficiary, was dependent on the beneficiary, or was emotionally or physically vulnerable. *See, e.g., Melter*, 167 Wn. App. at 290-91, 307

9

(confidential relationship existed when decedent lived with her son, was dependent on him because she was unable to live alone, and was in a vulnerable emotional state due to the recent deaths of her daughter and husband); *Jones*, 170 Wn. App. at 607-08 (confidential relationship assumed to exist between decedent and her sons because the decedent was distraught by the recent death of her husband and dependent on her sons to run the family farming operation).

The Estate has demonstrated that Correll considered Lanterno family and believed that Lanterno would act in her best interests. Ihde testified that Correll decided to change the beneficiaries on her POD accounts because she wanted to leave her money to the friends she considered family, including Lanterno. And it appears that Correll believed that Lanterno would act in her best interests because she designated Lanterno her attorney in fact. However, these two facts are not sufficient to establish a confidential relationship considering the other facts regarding Lanterno's relationship with Correll. There is no evidence that Correll was in a particularly vulnerable state, either emotionally or physically. Correll lived by herself and was capable of managing her affairs. Although Lanterno saw Correll regularly, they were together for brief periods once or twice a week. During the time they spent together, Lanterno and Correll watched television or talked about hobbies and mutual interests such as Correll's dolls. There is not clear, cogent, and convincing evidence in the record that would allow a rational trier of fact to find a confidential relationship between Lanterno and Correll.

2. *Fiduciary Relationship*

The Estate also argues that there was a fiduciary relationship between Correll and Lanterno because Lanterno was a banker at the bank in which Correll maintained some of her accounts. However, neither party nor the applicable case law provides an appropriate definition of fiduciary relationship for the purposes of an undue influence claim. The definition of

"fiduciary relationship" appears to differ, depending on the cause of action. Therefore, we begin our analysis by defining a fiduciary relationship for the purposes of an undue influence claim. Principles of undue influence are derived from both contract law and tort law.

We first examine the definition of fiduciary relationship that governs contract disputes. *See Jones*, 170 Wn. App. at 607. In a fiduciary relationship, one party "'occupies such a relation to the other party as to justify the latter in expecting that his interests will be cared for.'" *Liebergesell*, 93 Wn.2d at 889-90 (quoting RESTATEMENT (FIRST) OF CONTRACTS § 472(1)(c) (1932)). A fiduciary relationship arises as a matter of law in certain relationships such as attorney and client, doctor and patient, or trustee and beneficiary; but a fiduciary relationship may also arise from particular facts. *Liebergesell*, 93 Wn.2d at 890-91. Furthermore, an undue influence claim arises when "'*the result* was produced by means that seriously impaired the free and competent exercise of judgment.'" *Jones*, 170 Wn. App. at 607 (emphasis added) (quoting RESTATEMENT (SECOND) OF CONTRACTS § 177, cmt. b)). Therefore, it is not sufficient for a fiduciary relationship to exist between the parties; the fiduciary relationship must exist in relation to the asset which is the subject of the undue influence claim.

Here, the Estate claims that a fiduciary relationship existed between Lanterno and Correll because Lanterno was a bank teller at the Chase bank where Correll maintained some of her accounts until she transferred her money into the POD accounts at Kitsap Bank. Bank tellers do not, as a matter of law, enter into fiduciary relationships with their customers. *Annechino v. Worthy*, 162 Wn. App. 138, 142-43, 252 P.3d 415 (2011) (citing *Liebergesell*, 93 Wn.2d at 889), *aff'd*, 175 Wn.2d 630. 290 P.3d 126 (2012). "As a general rule, participants in a business transaction deal at arm's length and do not enter into a fiduciary relationship." *Annechino*, 162 Wn. App. at 143 (citing *Liebergesell*, 93 Wn.2d at 889). This general rule applies to transactions

between a bank and a depositor, but a "quasi-fiduciary relationship" may arise under special circumstances. *Annechino*, 162 Wn. App. at 143 (citing *Tokarz v. Fed. Frontier Savings & Loan Ass'n*, 33 Wn. App. 456, 459, 656 P.2d 1089 (1982); *Liebergesell*, 93 Wn.2d at 890). To establish a fiduciary relationship in banking transactions there must be evidence establishing that the transaction "involved more trust and confidence than a typical arm's length transaction." *Annechino*, 162 Wn. App. at 146.

For the purposes of the Estate's claim that Lanterno had a fiduciary relationship with Correll, by virtue of Lanterno working at Correll's bank, the Estate has not produced any evidence other than the fact that Lanterno worked at the same bank at which Correll maintained some of her accounts. There is no evidence that Lanterno managed Correll's bank accounts in a manner that would demonstrate that Correll expected Lanterno to act in her best interests when managing her money. *See Liebergesell*, 93 Wn.2d at 889-90. And although Lanterno worked at a bank where Correll maintained some accounts, she did not work at the bank where the POD account was located.

Furthermore, the personal friendship between Lanterno and Correll does not establish a fiduciary relationship between Lanterno and Correll. For the purposes of establishing a fiduciary relationship, Lanterno and Correll would have to have a *professional* relationship that involved trust and confidence. Here, the Estate has not presented evidence that Lanterno and Correll had a professional relationship that would lead Correll to believe that Lanterno would manage her bank accounts or deposits or act in her best interests when conducting her banking transactions.

The Estate has not presented any evidence that Lanterno acted in any way other than a bank teller; therefore, any banking transactions between Lanterno and Correll would be considered "arm's length" business transactions which do not alone establish a fiduciary

12

relationship. *See Annechino*, 162 Wn. App. at 147-48. Accordingly, the Estate has not presented clear, cogent, and convincing evidence from which a rational trier of fact could find a fiduciary relationship existed between Lanterno and Correll.

B. *Participation in the Transaction*

The Estate also argues that Lanterno participated in the transaction. Based on the facts presented in the record, there are two ways that Lanterno could have participated in the transaction.[4] Either (1) Lanterno directly participated in the transaction designating her the POD beneficiary of the account, or (2) Lanterno participated in the transaction by delivering the $400,000 check to the bank. There is no evidence that Lanterno actually participated in the transaction designating her as the POD beneficiary for Correll's account. And delivering the $400,000 to the bank is not sufficient evidence to establish a presumption of undue influence. Because the Estate has presented clear, cogent, and convincing evidence that establishes nothing more than Lanterno's minimal participation in the bank deposit, no rational trier of fact could find that Lanterno participated in the transaction establishing her as the beneficiary of the POD account by clear, cogent, and convincing evidence.

The transaction changing the beneficiary on Correll's POD account was initiated by a handwritten letter from Correll with her instructions to designate Lanterno as the POD beneficiary of the account. Then Ihde spoke directly with Correll to confirm her request and instructions. The record does not contain clear, cogent, and convincing evidence from which a

---

[4] The Estate also argues that its handwriting analyst's declaration creates a genuine issue of material fact as to whether Lanterno participated in the transaction. However, the handwriting analyst averred only that he was unable to determine whether Correll's signature on the documents was genuine. There was no evidence that any of the handwriting on the check was Lanterno's. The handwriting analyst's declaration does not establish any material fact.

13

rational trier of fact could find that Lanterno participated in the transaction designating her as the beneficiary of Correll's POD account.

The Estate also argues that Lanterno participated in the transaction because she delivered the $400,000 check and other related documents to the bank. Even if we disregarded Lanterno's uncontroverted declaration that she was not aware of the contents of the documents she delivered to the bank, Lanterno's minimal participation in the transaction is insufficient to support a presumption of undue influence. Participation in the transaction sufficient to support a presumption of undue influence requires that the beneficiary actively dictated the terms of transaction, purportedly on behalf of the decedent. *See, e.g., In re Estate of Haviland*, 162 Wn. App. 548, 555-56, 255 P.3d 854 (2011) (decedent's wife participated in transaction by advising decedent's attorney about the changes decedent wanted to make to his will, wrote the letter dictating the terms of the new will, and accompanied decedent to his attorney's office to sign the new will); *Doty v. Anderson*, 17 Wn. App. 464, 468, 563 P.2d 1307 (1977) (beneficiary participated in the transaction because beneficiary personally signed the signature cards designating her as the joint tenant on decedent's bank account and was at the bank with the decedent when she changed the designation on the account). Here, Lanterno was surprised about the amount of money in the POD bank account and there is uncontested evidence that Lanterno was unaware that she had been named the beneficiary of the account until Denley informed her. Combined with the fact that Lanterno did not know the contents of the documents she delivered to the bank and the fact that Lanterno never signed documents related to the change of POD beneficiary on the account, no rational trier of fact could find clear, cogent, and convincing evidence establishing that Lanterno participated in the transaction.

## C. *Unusually Large or Disproportionate Benefit*

Finally, the Estate argues that Lanterno received a disproportionate amount of Correll's estate. However, there is no evidence in the record to support that assertion. We agree that $400,000 is a significant amount of money; however, we cannot determine whether this is a disproportionately large portion of Correll's estate because the Estate presented no evidence of the entire value of the estate.

A presumption of undue influence requires, at a minimum, that the party attempting to prove undue influence shows the existence of a confidential or fiduciary relationship, the beneficiary participated in the transaction, and the beneficiary received a disproportionate or unnaturally large portion of the estate. We hold that a presumption of undue influence can be based on either a confidential or fiduciary relationship. Confidential relationships are created through personal relationships, such as family relationships or friendships, but require evidence demonstrating that the relationship has placed the beneficiary in a position to overcome the decedent's independent judgment. In contrast, a fiduciary relationship is a professional relationship in which the decedent believes that the beneficiary is acting in the decedent's best interests.

Here, no rational trier of fact could find clear, cogent, and convincing evidence establishing either a confidential relationship or a fiduciary relationship existed between Lanterno and Correll. In addition, no rational trier of fact could find clear, cogent, and convincing evidence establishing that Lanterno participated in the transaction or received a disproportionate amount of Correll's estate. Accordingly, the Estate failed to establish a presumption of undue influence.

### III. Presumption Sufficient to Defeat Summary Judgment

Even if we assumed that the Estate presented sufficient evidence to create a presumption of undue influence, the presumption is not sufficient to defeat a motion for summary judgment. "An undue influence claim must include more than merely the presumption that can arise from a confidential relationship." *Jones*, 170 Wn. App. at 609. Although a presumption may be sufficient for a trial court to grant or deny a motion for summary judgment, the presumption may be rebutted by evidence. *Jones*, 170 Wn. App. 610. Where a party is unable to present evidence of more than a confidential relationship, or where the presumption of undue influence is effectively rebutted by additional evidence, the presumption of undue influence is not sufficient to defeat a motion for summary judgment. *Jones*, 170 Wn. App. at 610.

Here, Lanterno has effectively rebutted the presumption of undue influence with a significant amount of evidence demonstrating that Correll was acting independently at the time she designate Lanterno as the beneficiary of the payable on death account. Ihde spoke to Correll on the phone twice, and each time Correll clearly stated her desire to leave her money to her friends rather than her family. Ihde also stated that after receiving Correll's written instructions changing the designated beneficiary of the account, she confirmed the instructions with Correll and Correll was of sound mind. In addition, Correll's attorney testified that Correll knew exactly what she was doing at the time she signed her new will and designated Lanterno her attorney in fact. The Estate has presented no evidence suggesting that Correll was incompetent or incapable of handling her own affairs. *Jones*, 170 Wn. App. at 611. "Presumptions must give way in light of evidence." *Jones*, 170 Wn. App. at 611 (citing *In re Marriage of Akon*, 160 Wn. App. 48, 62, 248 P.3d 94 (2011)). Because the evidence presented was contrary to the presumption of undue

influence, the trial court properly granted Lanterno's motion for summary judgment. *Jones*, 170 Wn. App. at 611.

## IV. ATTORNEY FEES

The trial court granted Lanterno attorney fees under RCW 11.96A.150. Lanterno also asks us for appellate attorney fees under RCW 11.96A.150 and RAP 18.1. The Estate argues that the trial court erred by granting Lanterno attorney fees and that Lanterno is not entitled to attorney fees on appeal because RCW 11.96A.150 does not apply to this case.

To determine whether the trial court properly awarded attorney fees, we apply a dual standard of review. *Gander v. Yeager*, 167 Wn. App. 638, 647, 282 P.3d 1100 (2012). We review the initial determination of whether there is legal basis to award attorney fees de novo. *Gander*, 167 Wn. App. at 646 (citing *Unifund CCR Partners v. Sunde*, 163 Wn. App. 473, 483-84, 260 P.3d 915 (2011)). If there is a legal basis for awarding attorney fees, "we review a discretionary decision to award or deny attorney fees and the reasonableness of any attorney fee award for an abuse of discretion." *Gander*, 167 Wn. App. at 647.

When a question of law requires interpretation of a statute, our objective is to carry out the legislature's intent. *Sprint Spectrum, LP v. Dep't of Revenue*, 174 Wn. App. 645, 658, 302 P.3d 1280 (2013) (citing *Lake v. Woodcreek Homeowners Ass'n*, 169 Wn.2d 516, 526, 243 P.3d 1283 (2010)). We begin with the statute's plain meaning. *Sprint*, 174 Wn. App. at 658 (citing *Lake*, 169 Wn.2d at 526). "We discern the plain meaning from the ordinary meaning of the language at issue, the statute's context, related provisions, and the statutory scheme as a whole." *Sprint*, 174 Wn. App. at 658 (citing *Lake*, 169 Wn.2d at 526). When a statute's language is unambiguous, we determine the legislature's intent from the plain language of the statute alone.

*Sprint*, 174 Wn. App. at 658 (citing *Waste Mgmt. of Seattle, Inc. v. Util. & Transp. Comm'n*, 123 Wn.2d 621, 629, 869 P.2d 1034 (1994)).

RCW 11.96A.150 provides,

(1) Either the superior court or any court on an appeal may, in its discretion, order costs, including reasonable attorneys' fees, to be awarded to any party: (a) From any party to the proceedings; (b) from the assets of the estate or trust involved in the proceedings; or (c) from any nonprobate asset that is the subject of the proceedings. . . .
(2) This section applies to all proceedings governed by this title, including but not limited to proceedings involving trusts, decedent's estates and properties, and guardianship matters.

Ch. 11.96A RCW applies to "[a]ll matters concerning the estates and assets of . . . deceased persons, including matters involving nonprobate assets." RCW 11.96A.020(1)(a). By definition, this includes "[t]he determination of any question arising in the administration of an estate or trust or with respect to any nonprobate asset." RCW 11.96A.030(2)(c).

The Estate argues that RCW 11.96A.150 does not apply because this is not a "proceeding" under RCW 11.96A.150. The Estate relies on the fact that this case was initiated by Kitsap Bank under RCW 30.22.210. However, under former RCW 11.96A.090(2) (1999) "[a] judicial proceeding under this title may be commenced as a new action or *as an action incidental to an existing judicial proceeding relating to the same trust or estate or nonprobate asset.*" (Emphasis added.) Here, Kitsap Bank initiated the action under RCW 30.22.210 because of the dispute over the legal ownership of the funds of Correll's POD bank account; once the Estate filed its cross claim alleging undue influence, the original proceeding became a matter concerning the nonprobate asset under ch. 11.96A RCW. *See In re the Estate of Burks*, 124 Wn. App. 327, 333, 100 P.3d 328 (2004) (applying RCW 11.96A.150 to determine whether a party was entitled to attorney fees in a dispute over the ownership of funds from a POD account).

18

Because the attorney fees provisions in RCW 11.96A.150 apply to this case, we review the trial court's award of attorney fees for an abuse of discretion. *In re Wash. Builders Benefit Trust*, 173 Wn. App. 34, 84-85, 293 P.3d 1206, *review denied*, 177 Wn.2d 1018 (2013). "A trial court abuses its discretion if its decision to award or deny attorney fees under RCW 11.96A.150 is manifestly unreasonable or based on untenable grounds or reasons." *Wash. Builders*, 173 Wn. App. at 85. In this case, the trial court did not abuse its discretion when it awarded Lanterno attorney fees because there were not any particularly unique issues presented in this case. *See Burks*, 124 Wn. App. at 333. Furthermore, we also grant Lanterno's request for reasonable attorney fees on appeal in an amount to be determined by a commissioner of this court.

We affirm.

_____
WORSWICK, C.J.

We concur:

_____
HUNT, J.

_____
MAXA, J.