**NOTICE: SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion. Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision. Slip opinions can be changed by subsequent court orders. For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion. Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports. An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.** The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports. Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

|  |  |
|---|---|
| In the Matter of the Estate of:<br><br>RICHARD D. KOLESAR,<br><br>                       Deceased. | DIVISION ONE<br><br>No. 83919-5-I<br><br>PUBLISHED OPINION |

DWYER, J. — The trial court in this matter took the unusual approach of issuing three separate orders all purporting to admit Richard Kolesar's will to probate. We are today required to determine which of those orders is controlling for the purpose of establishing the time period in which a will contest may be initiated. We hold that the trial court's order of July 9, 2020 is controlling, as it was the final such order entered. Hence, the deVry family's will contest claim was timely asserted and improperly dismissed. We accordingly reverse the dismissal of the will contest claim and remand the matter for further proceedings consistent with this opinion.

The deVry family[1] (hereinafter Petitioners) also challenges the trial court's dismissal of their claim for declaratory relief against Joseph Marsh. With regard to that claim, we hold that the Petitioners failed to present evidence that Marsh

---

[1] The deVry family consists of Scott deVry, Mary Anne deVry, Andrea Cantu, Roberto Cantu, Andrew deVry, Nicole deVry, and Corrine deVry.

No. 83919-5-I/2

engaged in financial exploitation of Richard Kolesar. Accordingly, we affirm the trial court's dismissal of that claim.

I

Richard Kolesar died on December 15, 2019. Richard[2] was married to Marilyn until the time of her death. The couple had no children. Throughout their lives, Richard and Marilyn maintained relationships with friends and extended family, including the children and grandchildren of Marilyn's cousin Betty deVry.

On May 2, 2011, Richard executed a last will and testament. Richard's 2011 will placed the bulk of his estate into a trust for Marilyn. The will made cash bequests to three nonprofit entities and left the residuary of his estate to Marilyn. It also provided that if Marilyn predeceased Richard, Richard's brother Donald[3] would inherit a sum of $50,000 and the residuary would pass in equal shares to Mary Anne deVry, Scott deVry, and Richard's niece Valerie Kolesar. If Valerie, Mary Anne, or Scott predeceased Richard, their portion of the estate would pass to Andrew deVry, Andrea Cantu, and Corrine deVry.

Marilyn died in 2012. On February 26, 2014, Richard's doctor diagnosed him with hallucinations and adjustment disorder with depressed mood, and observed that he was exhibiting early signs of psychosis. Richard was admitted to the Benevolent Adult Family Home (BAFH) in Kirkland, Washington three days later. BAFH is owned and operated by Reynold Quedado.

Shortly after his admission, Richard changed his power of attorney

---

[2] Due to the number of persons with the same last name, we refer to the Kolesars and deVrys by their first names to avoid confusion. No disrespect is intended.

[3] Donald also predeceased Richard.

No. 83919-5-I/3

designation, removing Mary Anne and appointing Valerie to act as his attorney-in-fact.  On July 30, 2014, Richard executed a new last will and testament, revoking the 2011 will.  Richard's 2014 will made cash bequests to the same nonprofit entities and devised a sum of $25,000 to Scott and Mary Anne deVry, to be divided between them.  The residuary of Richard's estate was to be divided as follows:

- 2 percent to Andrew deVry
- 2 percent to Andrea Cantu
- 2 percent to Corrine deVry
- 20 percent to Joseph Marsh
- 34 percent to Valerie Kolesar
- 40 percent to Reynold Quedado

Valerie was nominated to act as personal representative of the estate.

Respondent Joseph Marsh is the son of John and Betty Marsh, longtime friends of Richard and Marilyn.  Richard met John shortly after World War II, when they both attended the University of Washington engineering school.  Richard and Marilyn remained good friends with John and Betty for their entire lives.  Richard thus knew Joseph since his birth.

Joseph Marsh[4] had acted as Richard and Marilyn's broker-dealer since 1982.  Marsh spoke to both Richard and Marilyn approximately once per month and Marsh would typically take them to lunch after their annual review.  Marsh also visited Richard every year on his birthday (July 27) after Marilyn's death.  As a broker-dealer, Marsh's duty was to make investment transactions with Richard and Marilyn's funds after consulting with them and obtaining their approval.

---

[4] Joseph Marsh will hereinafter be referred to by his surname.

Richard's 2014 will identifies Marsh as "my friend and financial advisor."

On May 5, 2020, the trial court issued an order admitting to probate the "Last Will and Testament of Decedent Richard D. Kolsar," dated July 30, 2014. The order appointed Valerie as personal representative of the estate. Richard's last name was incorrectly spelled "Kolsar" in both the case caption and on the letters testamentary.

On July 2, 2020, the trial court entered an amended order probating the will and confirming the personal representative. Richard's name was spelled correctly on this order. A second amended order was entered on July 9, 2020, directing the clerk of court to reissue letters testamentary with Richard's name spelled correctly. Both the July 2 and July 9 orders state that the 2014 will was "hereby admitted to probate," with no reference to any prior order.

Valerie resigned as personal representative in September 2020. Respondent Dominick Driano was named successor personal representative of the estate.

On October 30, 2020, Petitioners filed a petition contesting the validity of the 2014 will. Petitioners alleged that the 2014 will was "invalid because Richard lacked testamentary capacity" and because Richard was "under undue influence and control from [Quedado], [Marsh], and/or others." Petitioners also requested a declaration that Quedado and Marsh were "abusers" as defined by chapter 11.84 RCW and were therefore ineligible to inherit from Richard's estate.

The personal representative filed a motion to dismiss the will contest as untimely pursuant to RCW 11.24.010. The personal representative also asserted

4

No. 83919-5-I/5

that only Scott and Mary Anne had standing to contest the will, as they were the only members of the deVry family named as beneficiaries in Richard's 2011 will. Marsh and Quedado joined the motion. Marsh also separately filed a motion to dismiss all claims against him. The trial court granted both motions.

Marsh then filed a motion requesting an award of attorney fees, which the trial court denied. The personal representative also moved for an award of attorney fees. The trial court granted this motion, awarding the personal representative $23,782 in fees and costs, payable from the estate.

The two dismissal orders were designated as final judgments under CR 54(b) on April 4, 2022. Petitioners timely appealed.

II

Petitioners assert that the trial court erred by ruling that only Scott and Mary Anne had standing to bring a will contest claim. This is so, they contend, because the remaining Petitioners were named beneficiaries in Richard's 2014 will. We disagree.

Interpretation of a probate statute is a question of law that we review de novo. <u>In re Est. of Jones</u>, 152 Wn.2d 1, 8-9, 93 P.3d 147 (2004). RCW 11.24.010 permits "any person interested in any will" to contest the validity of the probated will or to challenge the rejection of probate. A "'person interested is one who has a direct, immediate, and legally ascertained pecuniary interest in the devolution of the testator's estate, such as would be impaired or defeated by the probate of the will or benefited by the declaration that it is invalid.'" <u>In re</u> <u>O'Brien's Estate</u>, 13 Wn.2d 581, 583, 126 P.2d 47 (1942) (internal quotation

5

No. 83919-5-I/6

marks omitted) (quoting Petitt v. Morton, 28 Ohio App. 227, 235, 162 N.E. 627 (1928)). "In other words, the contestant must stand to lose directly in a financial way if the will which he seeks to attack is permitted to stand." O'Brien, 13 Wn.2d at 583.

In contrast to Scott and Mary Anne, who would suffer a large financial loss if the 2014 will is permitted to stand, the remaining Petitioners would not suffer any loss. To the contrary, the remaining Petitioners would actually receive a financial *gain* if the 2014 will stands, as none of them are named beneficiaries in the 2011 will.[5] A person who will lose his or her financial interest if the will is invalidated does not have standing to contest the will. The trial court did not err.

III

Petitioners additionally assert that the trial court erred by dismissing their will contest claim as untimely pursuant to RCW 11.24.010. This is so, they assert, because the trial court's July 9 order probating Richard's will superseded the May 5 order, thus establishing a different date on which the will was admitted to probate. We agree.

A

The pertinent statute, RCW 11.24.010, states that a person who wishes to file a will contest must do so "within four months immediately following the probate or rejection thereof." This limitation is strictly construed. In re Est. of

---

[5] Although Andrew, Andrea, and Corrine were named as contingent beneficiaries in the 2011 will if both Scott and Mary Anne were deceased, this is not sufficient to confer standing upon them while Scott and Mary Anne are alive. Cf. Jevne v. Pass, LLC, 3 Wn. App. 2d 561, 567, 416 P.3d 1257 (2018) ("possible contingent future interest" insufficient to confer standing in HOA dispute).

6

Toth, 138 Wn.2d 650, 656, 981 P.2d 439 (1999).

As a general rule, court orders are subject to the same rules of construction as statutes, contracts, and other legal writings. Soriano v. Dep't of Labor & Indus., 8 Wn. App. 2d 575, 583, 442 P.3d 269 (2019). Primary among these rules is the maxim that there is no need to "look beyond the plain language of the [writing] to consider extraneous matters where there is no ambiguity presented by the words used." State v. Castle, 156 Wn. App. 539, 545, 234 P.3d 260 (2010).

The July 9 order unambiguously states: "The established Will of Richard D. Kolesar is hereby admitted to probate." The plain language of this order clearly indicates that the will was probated on the date of the order.

The personal representative argues that the trial court's July 9 order was not intended to alter the date of probate, but instead was meant solely to correct the case caption in the May 5 order. However, the July 9 order does not state anything to that effect. The July 9 order is not designated as an order nunc pro tunc, which would have made the order retroactive. It does not state that the will had been properly admitted to probate on an earlier date. The July 9 order does not even mention the May 5 order.[6]

As the latest entered order, the July 9 order is controlling over all other orders on the same subject. As such, the date that Richard Kolesar's will was

_____

[6] At oral argument, counsel for the personal representative had no effective counter to the suggestion that, were the court to adopt his argument, it would be necessary to review all three of the court's orders and determine from them which of the words in the July 9 order were effective and which were surplusage. No authority was cited to support the announcement of such an unusual duty.

probated was July 9, 2020.  The will contest claim filed on October 30, 2020 was therefore timely.

B

Not to be deterred, the personal representative next asserts that the statutory limitation period for asserting a will contest cannot be extended.[7]  In advancing this argument, the personal representative misconstrues the nature of the trial court's July 9 order.  The court's order did not purport to extend the limitation period imposed by RCW 11.24.010.  Rather, the order established the date on which the limitation period commenced.  The personal representative's argument is, thus, unavailing.

C

The trial court erred by dismissing Scott and Mary Anne's will contest claim.  Furthermore, Petitioners are correct that the personal representative should not have been awarded fees because the basis for that award—the dismissal of the will contest—was improper.  We accordingly reverse the dismissal of the will contest claim asserted by Scott and Mary Anne and direct the trial court on remand to vacate its award of attorney fees to the personal representative.

---

[7] The personal representative incorrectly refers to RCW 11.24.010 as a statute of repose. We recognize that this confusion arises from older case law that unartfully refers to RCW 11.24.010 using the word "repose."  However, as our current law defines the terms statute of limitation and statute of repose, RCW 11.24.010 is plainly a statute of limitation.  See Wash. State Major League Baseball Stadium Pub. Facilities Dist. v. Huber, Hunt & Nichols-Kiewit Constr. Co., 176 Wn.2d 502, 510-11, 296 P.3d 821 (2013).

IV

Petitioners next assert that the trial court erred by dismissing their declaratory judgment claim against Marsh, in which they requested that the court deem Marsh a "financial abuser" pursuant to chapter 11.84 RCW.[8] This is so, they contend, because their burden to present clear, cogent, and convincing evidence shifted to Marsh once they presented evidence of a fiduciary relationship. We disagree.

A

We review orders on summary judgment de novo.[9] Boyd v. Sunflower Props., LLC, 197 Wn. App. 137, 142, 389 P.3d 626 (2016). In doing so, we engage in the same inquiry as the trial court. Green v. Normandy Park Riviera Section Cmty. Club, Inc., 137 Wn. App. 665, 681, 151 P.3d 1038 (2007). Generally, all evidence and reasonable inferences therefrom must be construed in favor of the nonmoving party. Boyd, 197 Wn. App. at 142. "However, when reviewing a civil case in which the standard of proof is clear, cogent, and convincing evidence, [we] 'must view the evidence presented through the prism of the substantive evidentiary burden.'" Woody v. Stapp, 146 Wn. App. 16, 22, 189 P.3d 807 (2008) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 254, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). Thus, we must determine "whether, viewing the evidence in the light most favorable to the nonmoving party, a

---

[8] A person who is declared to be a "financial abuser" pursuant to chapter 11.84 RCW is deemed to have predeceased the decedent and is therefore ineligible to inherit from the decedent's estate. RCW 11.84.010, .020, .030.

[9] Although not styled as such, Marsh's "Motion to Dismiss" was in effect a summary judgment motion.

No. 83919-5-I/10

rational trier of fact could find that the nonmoving party supported his or her claim with clear, cogent, and convincing evidence." Woody, 146 Wn. App. at 22.

B

We first clarify the elements of Petitioners' declaratory judgment claim against Marsh.[10]  To succeed on their claim requesting that the trial court declare Marsh to be a "financial abuser," Petitioners must demonstrate by "clear, cogent, and convincing evidence that [the] person participated in conduct constituting financial exploitation against the decedent" and that

> (a) The decedent was a vulnerable adult at the time the alleged financial exploitation took place; and
> (b) The conduct constituting financial exploitation was willful action or willful inaction causing injury to the property of the vulnerable adult.

RCW 11.84.150(2); .160(1).  "Financial exploitation" is defined as

> (a) The use of deception, intimidation, or undue influence by a person or entity in a position of trust and confidence with a vulnerable adult to obtain or use the property, income, resources, or trust funds of the vulnerable adult for the benefit of a person or entity other than the vulnerable adult;
> (b) The breach of a fiduciary duty, including, but not limited to, the misuse of a power of attorney, trust, or a guardianship appointment, that results in the unauthorized appropriation, sale, or transfer of the property, income, resources, or trust funds of the

---

[10] On July 9, 2021, the trial court issued two orders.  In one, the trial court ordered that "[t]he Petitioners' will contest claims are dismissed as barred by the statute of repose contained in RCW 11.24.010."  In the other, the trial court ordered "that Petitioners' claims against Joseph Marsh are dismissed with prejudice."

The Petitioners' complaint asserts only two causes of action: a will contest and a request for declaratory judgment.  The will contest, as an in rem cause of action, is not a "claim against" Marsh.  See In re Est. of Black, 116 Wn. App. 492, 499, 66 P.3d 678 (2003).  Accordingly, the only claim "against Joseph Marsh" dismissed by the trial court's order was the claim requesting the trial court to declare that Marsh was a "financial abuser" pursuant to chapter 11.84 RCW.

10

vulnerable adult for the benefit of a person or entity other than the vulnerable adult; or

(c) Obtaining or using a vulnerable adult's property, income, resources, or trust funds without lawful authority, by a person or entity who knows or clearly should know that the vulnerable adult lacks the capacity to consent to the release or use of his or her property, income, resources, or trust funds.

RCW 74.34.020(7).

Petitioners' complaint alleges that Marsh was a financial abuser because he "exercis[ed] undue influence and control over Richard to persuade him to execute a new will." Petitioners' claim thus invokes subsection (7)(a) of RCW 74.34.020. However, Petitioners did not allege that Marsh engaged in any deception or intimidation. Thus, their claim of financial exploitation rests on the allegation of undue influence.

In summation, Petitioners' declaratory judgment claim, as pleaded, requires Petitioners to prove the following: (1) Richard was a vulnerable adult at the time the alleged financial exploitation took place; (2) Marsh was in a position of trust and confidence with Richard; (3) Marsh exercised undue influence; (4) Marsh did so in order to obtain or use Richard's property, income, resources, or trust funds; (5) Marsh's actions were willful; and (6) Marsh caused injury to Richard's property. Both parties focused their briefing to the trial court and to us on appeal on the second and third elements of the claim. We shall do the same here.

C

Petitioners assert that because Marsh was in a fiduciary relationship with Richard, they are entitled to a presumption that Marsh exercised undue

influence, i.e., that the burden shifted to Marsh to disprove the third element of their declaratory judgment claim. Marsh contends that Petitioners are not entitled to the presumption of undue influence because Marsh was not in a fiduciary relationship with Richard and, even if he were, a fiduciary relationship alone is not sufficient to invoke the presumption. We need not decide whether Petitioners presented evidence that Marsh was in a fiduciary relationship with Richard, as a fiduciary relationship alone does not entitle Petitioners to invoke the presumption and relieve them of their burden of proof.[11]

RCW 74.34.020(7)(a) does not define the term "undue influence." However, "undue influence" is a term of art that has long been utilized in the common law. "[W]hen 'the legislature uses a term well known to the common law, it is presumed that the legislature intended it to mean what it was understood to mean at common law.'" Schwartz v. King County, 200 Wn.2d 231, 239-40, 516 P.3d 360 (2022) (quoting State v. Dixon, 78 Wn.2d 796, 804, 479 P.2d 931 (1971)). Thus, common law cases concerning undue influence are pertinent to our decision herein.

The Restatement (Second) of Contracts § 177 (Am. Law Inst. 1981) defines "undue influence" as "unfair persuasion of a party who is under the domination of the person exercising the persuasion or who by virtue of the relation between them is justified in assuming that that person will not act in a

---

[11] On September 21, 2022, Marsh filed a motion to supplement the record with the results of the Financial Industry Regulatory Authority (FINRA) investigation into Marsh's receipt of a bequest from a nonfamily member. A commissioner of this court referred Marsh's motion to this panel. Because these documents do not satisfy the strict criteria set forth in RAP 9.11, we deny the motion.

No. 83919-5-I/13

manner inconsistent with his welfare." This section of the Restatement has been adopted as the law in Washington. In re Infant Child Perry, 31 Wn. App. 268, 272-73, 641 P.2d 178 (1982). As the comments to the Restatement indicate, a party claiming that a contract is voidable due to undue influence must prove not only a qualifying relationship, but also that the contract was induced by unfair persuasion. RESTATEMENT § 177, cmt. b. In other words, under the Restatement, proof of a fiduciary or confidential relationship does not in and of itself constitute proof of undue influence.

Washington cases discussing the presumption of undue influence are in accord. In In re Estates of Jones, 170 Wn. App. 594, 600-01, 287 P.3d 610 (2012), two sisters filed a TEDRA[12] claim against two brothers for the rescission of a real estate agreement entered into by their mother three years prior to her death. The sisters asserted that because the brothers had a confidential relationship with their mother, they were entitled to a presumption of undue influence and, therefore, the burden of proof shifted to the brothers to prove that the transaction was not the result of undue influence. Jones, 170 Wn. App. at 601. After both parties moved for summary judgment, the trial court granted summary judgment to the brothers on the basis that there was no evidence of undue influence. Jones, 170 Wn. App. at 602.

The appellate court affirmed the trial court's decision. In so doing, the court held:

_____

[12] Trust and Estate Dispute Resolution Act, chapter 11.96A RCW.

13

No. 83919-5-I/14

> An undue influence claim must include more than merely the presumption that can arise from a confidential relationship. In cases where a confidential relationship resulted in undue influence, there typically is evidence of some type of loss resulting from that relationship. *In other words, there must be something more than the relationship.* Here, there was not. A focus on simply what was given up, without consideration of what was received, is not sufficient to establish that an unfair transaction occurred. In the absence of an unbalanced transaction, there has to be some additional evidence of influence beyond the confidential relationship.

Jones, 170 Wn. App. at 609-10 (emphasis added) (citations and footnote omitted). Because the sisters had relied solely on the existence of a confidential relationship and presented no other evidence of undue influence by the brothers or of loss to the mother, the court concluded that summary judgment was proper. Jones, 170 Wn. App. at 610.

That a fiduciary or confidential relationship is not sufficient in and of itself to raise a presumption of undue influence was reaffirmed in Kitsap Bank v. Denley, 177 Wn. App. 559, 312 P.3d 711 (2013). The administrator of the decedent's estate therein alleged that a beneficiary designation on a payable-on-death (POD) bank account was the product of the undue influence of a bank teller. The beneficiary moved to dismiss the claim on summary judgment, asserting that the estate had not presented sufficient evidence to demonstrate undue influence.[13] Denley, 177 Wn. App. at 566-67. The trial court granted the motion. Denley, 177 Wn. App. at 567.

---

[13] We do not mean to suggest that undue influence exists as a free-standing cause of action. Rather, undue influence is a legal principle that sounds in contract law, upon which a court may void a transfer of property, be it through a will, beneficiary designation, contract, or gift.

14

We affirmed the trial court's order. In so doing, we began with the principle that on summary judgment, "the party bearing the burden to prove the undue influence claim at trial must present sufficient evidence to make it highly probable that the undue influence claim will prevail at trial." Denley, 177 Wn. App. at 569. Following the Restatement, we held that "[a] presumption of undue influence requires, at a minimum, that the party attempting to prove undue influence shows the existence of a confidential or fiduciary relationship, the beneficiary participated in the transaction, and the beneficiary received a disproportionate or unnaturally large portion of the estate." Denley, 177 Wn. App. at 578. We then analyzed each of these factors as it pertained to the case at hand.

As to the first factor, we held that it was not enough simply for some sort of fiduciary relationship to exist. As we noted, "an undue influence claim arises when '*the result* was produced by means that seriously impaired the free and competent exercise of judgment.'" Denley, 177 Wn. App. at 574 (quoting Jones, 170 Wn. App. at 607) (internal quotation marks omitted). Accordingly, "the fiduciary relationship must exist in relation to the asset which is the subject of the undue influence claim." Denley, 177 Wn. App. at 574. In that case, there was no evidence of a fiduciary or confidential relationship at all, much less with respect to the POD account.

As to the second factor, we clarified that in order to demonstrate that the beneficiary actively participated in the transaction, the challenger must present evidence that the beneficiary actively dictated the terms of the transaction, rather

15

than being an observer or minor participant. Denley, 177 Wn. App. at 577. The only evidence presented in Denley, however, was that the beneficiary had delivered a $400,000 check to the bank along with an envelope containing deposit slips, signature cards, and POD designations for three other accounts. 177 Wn. App. at 577. Uncontested evidence also demonstrated that the beneficiary was unaware that she had been designated as the beneficiary of the POD account. Denley, 177 Wn. App. at 577. We held that on these facts, "no rational trier of fact could find clear, cogent, and convincing evidence establishing that [the beneficiary] participated in the transaction." Denley, 177 Wn. App. at 577.

We additionally noted that the third factor could not be analyzed because there was no evidence presented as to the size of the decedent's estate. Denley, 177 Wn. App. at 578. Because the Estate had not presented evidence establishing any of the three factors that could raise a presumption of undue influence, we held that summary judgment was appropriately granted.

We finally held that even if there had been sufficient evidence to raise the presumption of undue influence, that presumption was not sufficient to defeat the bank teller's motion for summary judgment. Denley, 177 Wn. App. at 578. "Where a party is unable to present evidence of more than a confidential relationship, or where the presumption of undue influence is effectively rebutted by additional evidence, the presumption of undue influence is not sufficient to defeat a motion for summary judgment." Denley, 177 Wn. App. at 579. This is

16

so because "'[p]resumptions must give way in light of evidence.'" Denley, 177 Wn. App. at 579 (quoting Jones, 170 Wn. App. at 611).

As these cases make clear, under the common law, the existence of a fiduciary or confidential relationship does not, by itself, create a presumption of undue influence. The party challenging the transaction cannot rely solely on an alleged fiduciary or confidential relationship to defeat a motion for summary judgment.

We acknowledge that Petitioners' declaratory judgment claim is based in statute, not in the common law. However, we presume that the legislature's use of the term "undue influence" while defining "financial exploitation" was an intentional invocation of the common law concerning that term. See Schwartz, 200 Wn.2d at 239-40. Accordingly, Petitioners could not dispense with their burden of proof simply by presenting evidence that Marsh was in a fiduciary relationship with Richard. A claim of financial abuse also requires evidence that the defendant participated in the transaction and that any undue influence asserted resulted in the vulnerable adult's loss of property.

Petitioners' briefing to this court, as well as their response to Marsh's motion in the trial court, demonstrate that they rely solely on their allegation that Marsh was in a fiduciary relationship with Richard as evidence of undue influence. Indeed, Petitioners repeatedly emphasize Marsh's burden to disprove their claims, rather than their own burden to present evidence when faced with a dispositive motion.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 83919-5-I/18

Here, the only evidence presented by Petitioners beyond the alleged fiduciary relationship between Marsh and Richard was:

- A declaration from Marsh stating that he visited Richard every year on his birthday (July 27), which was shortly before the 2014 will was executed;
- Richard's 2011 will that did not mention Marsh at all;
- Richard's 2014 will that left 20 percent of the residual of his estate to Marsh; and
- Medical records indicating that in February 2014, Richard was experiencing hallucinations.

This evidence is not sufficient for Petitioners to shift the burden of disproving their claim to Marsh. Significantly, Petitioners presented no evidence that Marsh participated in making himself a beneficiary. To the contrary, Marsh presented evidence that he was unaware of the contents of Richard's will until the time of his death. As in Denley, Petitioners cannot successfully rely on a presumption in the face of actual evidence.[14]

Nor did petitioners present any evidence of Richard's mental faculties in July 2014, the time at which the will was executed.[15] Most importantly, Petitioners presented no evidence that *Richard* was harmed in any way by his relationship with Marsh. At most, Petitioners have only presented evidence of harm to Richard's beneficiaries. However, a claim of financial exploitation requires injury to the vulnerable adult himself, not to his estate. RCW 11.84.160(1)(a).

---

[14] Petitioners argued to the trial court that Marsh's motion should have been continued so that Petitioners could take Marsh's deposition. They do not raise this argument on appeal.

[15] Indeed, evidence was presented that, in August 2014, Richard's doctor deemed him mentally capable to make legal, financial, and medical decisions.

Furthermore, as Marsh points out, the fiduciary relationship that Petitioners allege to have existed was not related to the bequest in Richard's will. Here, Petitioners allege that Marsh's fiduciary relationship arose out of his role as Richard's broker-dealer. Richard's brokerage account had its own beneficiary designation. There is no evidence in the record establishing who the beneficiaries of that account are.

The decision in McCutcheon v. Brownfield, 2 Wn. App. 348, 467 P.2d 868 (1970), upon which Petitioners rely, is inapposite and, thus, does not compel a contrary result. McCutcheon concerned the revocation of an inter vivos gift given by a mother to her daughter. 2 Wn. App. at 349. As has long been the law in this state, inter vivos gift transfers are subject to greater scrutiny than testamentary transfers of property. Meyer v. Campion, 120 Wash. 457, 470, 207 P. 670 (1922). Under the common law of gifts, the burden is on the recipient to prove by clear and convincing evidence that the transfer was indeed a gift. In re Ests. of Palmer, 145 Wn. App. 249, 261, 187 P.3d 758 (2008). Thus, unlike testamentary transfers and contracts, which are presumed to be valid until proven otherwise, transfers of inter vivos gifts are presumed to be *invalid* until proven otherwise. Palmer, 145 Wn. App. at 261. When the recipient is in a confidential or fiduciary relationship with the giver, an additional presumption of undue influence applies, and the recipient must also rebut this presumption by clear and convincing evidence. Palmer, 145 Wn. App. at 261.

Petitioners have not alleged and did not present any evidence that Marsh was the recipient of an inter vivos gift from Richard. As such, the law concerning

19

inter vivos gifts, including McCutcheon's discussion of the issue, has no application in this case.

Here, the Petitioners made no effort to present evidence beyond the alleged fiduciary relationship between Marsh and Richard. Thus, even had Petitioners presented evidence of a fiduciary relationship, there is no evidence to support a claim that Marsh engaged in "financial exploitation" of Richard, as defined by statute. The trial court did not err by dismissing Petitioners' declaratory judgment claim against Marsh.

V

Petitioners, the personal representative, and Marsh all request an award of attorney fees pursuant to RCW 11.96A.150. This statute permits us to award fees to any party in a TEDRA action as we deem equitable. RCW 11.96A.150(1). It is not a requirement that a party substantially prevail to be awarded fees. In re Est. of Mower, 193 Wn. App. 706, 728, 374 P.3d 180 (2016). Nonetheless, "[t]he touchstone of an award of attorney fees from the estate is whether the litigation resulted in a substantial benefit to the estate." In re Est. of Black, 116 Wn. App. 476, 490, 66 P.3d 670 (2003), aff'd, 153 Wn.2d 152, 102 P.3d 796 (2004).

At this time, there has been no demonstrated benefit to the estate or to any party. This is true even as to Marsh, as he still may inherit nothing should Scott and Mary Anne succeed in invalidating the 2014 will. We exercise our discretion to direct the trial court to determine whether an award of fees (including fees for this appeal) is warranted as to any party when it issues its

20

ultimate resolution on the merits.

The personal representative additionally requests an award of fees pursuant to RCW 11.48.050. This statute states that the personal representative "shall be allowed all necessary expenses in the care, management, and settlement of the estate." For the personal representative to be awarded fees pursuant to this statute, there must be evidence that the personal representative performed their duties in good faith. In re Est. of Shaughnessy, 104 Wn.2d 89, 95, 702 P.2d 132 (1985). As this court does not find facts, we leave this determination to the trial court.

Affirmed in part, reversed in part.

_____Dwyer, J._____

WE CONCUR:

_____Chung, J._____    _____Mann, J._____