## IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

LOUIS SACKETT,

     Respondent,

  v.

BART MARZOLF,

     Appellant.

)
)
)
)
)
)
)
)
)
)
)

DIVISION ONE

No. 78164-2-I

UNPUBLISHED OPINION

FILED: April 29, 2019

DWYER, J. — The trial court quieted title to a 25-acre parcel of farm property in Louis Sackett. Bart Marzolf appeals from that order, contending that the trial court's findings of fact are not supported by substantial evidence in the record and that the findings do not support the conclusions of law. Finding no error, we affirm.

I

Louis Sackett is a 91-year-old childless widower and retired marine pilot who resides alone in Edmonds. Sackett has owned a 25-acre farm property in Arlington since 1973. The farm includes a furnished residence, farm equipment, and outbuildings. Sackett's unsuccessful efforts to sell the farm were well known among his friends and neighbors.

Sackett met Bart Marzolf in the 1980s via Marzolf's family butcher business. Sackett and Marzolf developed a close relationship and treated each

other as family members. Marzolf accompanied Sackett on hunting trips, visited him frequently at his home and at the farm, talked to him on the telephone several times a week, and helped him recover from a hip fracture.

On March 17, 2017, Sackett signed a quit claim deed conveying the farm to Marzolf in exchange for "Ten Dollars & Other Valuable Consideration." Sackett and Marzolf prepared the deed together, and Marzolf drove Sackett to the bank to have it notarized and to county offices for recording. Marzolf and Sackett signed an excise tax affidavit and supplemental statement indicating that the transaction was a "gift without consideration." The following day, Marzolf, his fiancé, and his family moved onto the farm property.

On June 16, 2017, Sackett filed this action to void the quit claim deed and quiet title to the farm property in his name. The complaint alleged that Sackett had negotiated with Marzolf to sell the farm property for fair market value, and that Marzolf induced Sackett through undue influence and material misrepresentation to transfer the farm property to Marzolf by gift. Marzolf answered the complaint and counterclaimed to quiet title.

On December 11, 2017, Marzolf filed a motion for partial summary judgment requesting a ruling that the parties did not share a confidential relationship and that Sackett bears the burden of proving fraud by undue influence or material misrepresentation by clear, cogent, and convincing evidence. On January 12, 2018, the court granted Marzolf's motion. The case proceeded to a bench trial.

Sackett testified at trial. He said he had been trying to sell the farm for the past couple of years. Although other potential buyers had expressed interest, Sackett decided he wanted to sell the farm to Marzolf. He and Marzolf began negotiating purchase terms in March 2017. Sackett wanted $350,000 for the property, but Marzolf said he could not afford that. Sackett dropped the price to $300,000. The agreed terms were a down payment of $35,000 and monthly payments of $1,000 for two years, at which time a balloon payment for the remaining balance would be due. Marzolf told Sackett that he would pursue bank financing for the down payment. Sackett agreed to allow Marzolf to pay him less than $1,000 per month for the first couple of months until Marzolf paid off the loan on his pickup truck.

Marzolf told Sackett that the bank needed to see a quit claim deed in order for Marzolf to obtain a loan for the purchase. Sackett wanted Marzolf to buy the farm, so he agreed to give him a quit claim deed. At some point after the quit claim deed was recorded, Marzolf informed Sackett that he decided to assume ownership by way of the quit claim deed without payment. Sackett said this news "broke my heart." Sackett denied that he ever intended to gift the farm property to Marzolf.

Witnesses Ron Danielson, James Marriott, and Katrina Minchuk testified that Sackett attempted to sell the farm to each of them. Marriott specified that in January or February 2017, Sackett offered to sell the farm for $350,000, with a $35,000 down payment, $1,000 per month for two years, and a balloon payment to pay him off. Marriott did not pursue the transaction. Later, in March 2017,

3

Marriott was present when Sackett and Marzolf discussed Marzolf buying the farm property. Marriott also testified that Sackett "doesn't give away a penny" and "wouldn't give the farm away."

Minchuk testified that she was interested in purchasing the farm, but Sackett called her in February 2017 to say he had found another buyer.

Sackett's friend Dr. Arthur Castagno testified that Sackett talked about selling the farm property "a great deal" during the early part of 2017 and "pretty much daily" during March 2017. During the week of March 13, Sackett gave Castagno a "day-by-day description of what was happening with the financial aspects of the house sale, the farm sale."

Sackett's friend Earl Groendyk testified that during the last few years Sackett had been trying to get him to buy the farm "because he wanted it to go to someone he knew." Groendyk said Sackett's asking price was around $350,000. Groendyk testified that in January 2017, Sackett called to ask him to give his spare keys to the farm property to Marzolf. Sackett then gave the phone to Marzolf, who informed Groendyk that he was trying to buy the farm. Groendyk testified that Sackett was a "frugal gentleman" who was "not much into giving" and who never said that he intended to give the farm away.

Marzolf's testimony presented a different version of events. According to Marzolf, Sackett often said he wanted Marzolf to have the farm property, but never mentioned anything about payment. One day in February 2017, Sackett tossed the keys to Marzolf and said, "I want you to have the farm." Soon thereafter, Sackett spontaneously told Marzolf they needed to get a quit claim

deed. Sackett filled out the deed and about two weeks later they had it notarized and recorded. Sackett subsequently left Marzolf a voice mail congratulating him on getting the farm property.

A couple of days later, to Marzolf's great surprise, Sackett demanded that he sign a written agreement to purchase the farm. The offered terms were $300,000 or $350,000, with a $35,000 down payment and $1,000 a month payments. Marzolf said he could not afford that, and reminded him the farm was a gift. But Sackett insisted he "didn't recall" giving the farm to Marzolf.

Following settlement discussions, Marzolf stated that Sackett agreed to accept $500 per month for the farm "until I'm pushing up daisies." Marzolf denied telling Sackett that he was not going to buy the house because he already owned it via quit claim deed. Marzolf also denied telling Sackett that he needed a quit claim deed to obtain a purchase loan for the farm property. Rather, during the course of settlement negotiations, Marzolf told Sackett that the bank required a quit claim deed to obtain a home improvement loan.

Several witnesses testified for Marzolf. Marzolf's fiancé Janelle Whiteman testified that Sackett said he was giving them the farm. Marzolf's friend Vincent Phillips and Marzolf's son Stephen Meyers also testified they heard Sackett tell Marzolf the farm would be his some day, and that Sackett did not mention payment. Marzolf's uncle Mark Marzolf testified that in early 2017, Bart Marzolf called to say he needed to find out how to do a quit claim deed because Sackett had decided to give him the farm. And Debby Sundheim, exemption division supervisor for the Snohomish County Assessor's Office, testified that on March

5

17, 2017, Sackett told her that the transaction was a gift. Kimberly Sue Harrison, VP branch manager at Columbia Bank in Snohomish, testified that in March 2017 Marzolf sought a $150,000 home improvement loan for a farm that had been gifted to him. Harrison told Marzolf that because the farm was a gift, he would need to submit a copy of the quit claim deed to apply for a home improvement loan.

The trial court concluded that Sackett established by clear, cogent, and convincing evidence that he never intended to make a gift of the farm to Marzolf. The trial court also concluded that Sackett established by clear, cogent, and convincing evidence that the quit claim deed resulted from undue influence exerted by Marzolf upon Sackett. The court quieted title in the property to Sackett. Marzolf appealed.

II

Marzolf asserts that the trial court's findings of fact are not supported by substantial evidence in the record. We disagree.

Where, as here, the parties are not in a confidential or fiduciary relationship, the party seeking to set aside an inter vivos gift has the burden of showing the gift is invalid as a product of undue influence. Lewis v. Estate of Lewis, 45 Wn. App. 387, 388-89, 725 P.2d 644 (1986). The applicable quantum of evidence is clear, cogent, and convincing. In re Estate of Eubank, 50 Wn. App. 611, 619, 749 P.2d 691 (1988).

"In a bench trial where the trial court has weighed the evidence, our review is limited to determining whether substantial evidence supports the trial court's

findings of fact and whether those findings support the court's conclusions of law." Newport Yacht Basin Ass'n of Condo. Owners v. Supreme Nw., Inc., 168 Wn. App. 56, 63, 277 P.3d 18 (2012). Substantial evidence is the quantum of evidence sufficient to persuade a rational fair-minded person that the premise is true. Wenatchee Sportsmen Ass'n v. Chelan County, 141 Wn.2d 169, 176, 4 P.3d 123 (2000). "There is a presumption in favor of the trial court's findings, and the party claiming error has the burden of showing that a finding of fact is not supported by substantial evidence." Frank Coluccio Constr. Co. v. King County, 136 Wn. App. 751, 761, 150 P.3d 1147 (2007). "'When a challenged factual finding is required to be proved at trial by clear, cogent, and convincing evidence, we incorporate that standard of proof in conducting substantial evidence review.'" In re Estates of Jones, 170 Wn. App. 594, 603, 287 P.3d 610 (2012) (quoting In re Trust & Estate of Melter, 167 Wn. App. 285, 301, 273 P.3d 991 (2012)). We defer to the trier of fact to resolve conflicting testimony, evaluate the persuasiveness of evidence, and assess the credibility of witnesses. In re Parentage of G.W.–F., 170 Wn. App. 631, 637, 285 P.3d 208 (2012). We review conclusions of law de novo. Bingham v. Lechner, 111 Wn. App. 118, 127, 45 P.3d 562 (2002).

Marzolf first asserts that findings of fact 8 and 9 are not supported by substantial evidence in the record. These challenged findings of fact state:

> 8. SACKETT and MARZOLF had a close relationship. SACKETT trusted MARZOLF implicitly and treated him as a family member.

> 9. SACKETT had confidence that MARZOLF was trustworthy and would not act in any way against his best interest.

7

Marzolf acknowledges that he and Sackett shared a close relationship. But he contends that this friendship is not tantamount to evidence that Sackett unquestionably trusted him in real estate matters or that he would not act in any way against Sackett's best interest. We disagree. Marzolf did not challenge the trial court's finding that he and Sackett "treated each other as family members" and that he "was like a son to SACKETT." "Unchallenged findings of fact are verities on appeal." Rush v. Blackburn, 190 Wn. Ap. 945, 956, 361 P.3d 217 (2015). Moreover, Sackett specifically testified, "I felt that I could trust him" to make payments. Substantial evidence supports these findings and the underlying inferences.

Marzolf next challenges finding of fact 22. This challenged finding of fact states:

> 22. Debb[y] Sundheim of the assessor's office testified that she recalled the transaction from nearly 12 months ago, which the Court found a bit hard to believe. But, assuming that she did, the parties told her the quitclaim deed was a gift, despite the language on the deed itself which she simply disregarded as boilerplate. The Court notes that the parties had a motive to lie to her about whether or not the property was a gift given that they knew at the time that it would have caused them to pay excise tax which would likely have been a large amount of money.

Marzolf argues that there was no evidence or testimony that he and Sackett lied on the deed, on the excise affidavits, or to Sundheim in indicating that the conveyance was a gift, or that they were motivated by a desire to avoid paying excise tax. But Sackett testified at length that he never intended to give Marzolf the farm and that Marzolf agreed to purchase it on specific terms. The trial court found that Marzolf's testimony regarding a gift was not credible. And

several witnesses testified that Sackett was a frugal gentleman who would not have given the farm away. Substantial evidence supports these findings and the underlying inferences.

Marzolf also contends that the trial court's assessment of Sundheim's credibility was an abuse of discretion. But appellate courts do not assess credibility. Boeing Co. v. Heidy, 147 Wn.2d 78, 87, 51 P.3d 793 (2002). Moreover, the trial court expressly based this finding of fact on an assumption that Sundheim did recall the transaction.

Marzolf next challenges finding of fact 2. This challenged finding of fact states:

> 2. SACKETT'S long standing estate plan provided for the bulk of his estate to go to two charities special to him: Pacific Northwest Research Foundation and Shriner's Hospital. The farm property was a large asset and important piece of SACKETT'S estate that he intended to sell and liquidate to fund his estate plan.

Marzolf contends that this finding of fact is not supported by substantial evidence in light of documentary evidence that the transfer was a gift and Sundheim's unrebutted testimony that Sackett told her that he was giving the farm to Marzolf because he had taken such good care of him. But Sackett testified that the bulk of his estate would go to Pacific Northwest Research Foundation and Shriner's Hospital. And Alan Anderson, director of development for Shriners Hospital for Children of California, testified that Sackett told him the farm property was among the assets that would be part of his estate. This is consistent with the testimony of Danielson, Marriott, Minchuk, Castagno, and

Groendyk, all of whom testified regarding Sackett's efforts to sell the farm. This finding of fact is supported by substantial evidence.

Marzolf next challenges finding of fact 15. This challenged finding of fact states:

> 15. SACKETT has not purchased real property in 45 years and he did not understand how the execution of a quit claim deed would fit into the sale. SACKETT accepted MARZOLF'S word and explanation for the quit claim deed requirement.

Marzolf contends that there was no evidence that Sackett, a savvy real estate investor with an estate of more than $2.5 million, did not understand what he was doing when he signed the quit claim deed. He notes that there is no evidence that Sackett was confused or incompetent when he signed it. This argument disregards Sackett's testimony that he signed the deed because he trusted Marzolf and treated him as family. Moreover, the trial court found that "MARZOLF misrepresented to SACKETT that a quit claim deed was needed to get a loan for the down payment from Columbia Bank." Marzolf failed to assign error to this finding in his opening brief. "An issue raised and argued for the first time in a reply brief is too late to warrant consideration." Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 809, 828 P.2d 549 (1992). This finding is a verity on appeal. And substantial evidence supports the trial court's finding.

Marzolf next challenges findings of fact 11 and 12. These challenged findings of fact state:

> 11. During the months of February and early March 2017, SACKETT and MARZOLF negotiated a purchase and sale of the farm property. The sale terms were similar to the terms SACKETT had offered to sell the farm property to neighbors and friends. Those terms included a sale price of approximately $350,000.00.

12. SACKETT initially offered to sell the farm property to MARZOLF for $350,000.00. After negotiations, which concluded prior to March 13, 2017, agreement was reached. The sale price and terms agreed to for MARZOLF'S purchase of SACKETT'S farm property was a $300,000.00 purchase price, $35,000.00 down payment and monthly payments of $1,000.00 for two years when the balance would be due. SACKETT agreed to accept monthly payments of less than $1,000.00 for a few months while MARZOLF paid off his truck.

Marzolf argues that substantial evidence does not support the court's findings regarding the timing of the sale. He notes that Sackett's testimony was inconsistent and unclear regarding the specific dates on which the alleged purchase and sale negotiations took place. In contrast, Marzolf testified that no negotiations took place until after the quit claim deed was recorded and Sackett suddenly began demanding payment. But Sackett specified that he and Marzolf negotiated the terms of sale before the quit claim deed was signed on March 17, 2017. In addition, Groendyk testified that Marzolf was trying to buy the farm as early as January 2017. And Castagno testified that Sackett spoke with him daily during the week of March 13, 2017 about the financial aspects of the house sale.

Marzolf also argues that his version of events was corroborated by Kimberly Harrison of Columbia Bank. She testified that Marzolf came to her in March 2017 seeking a home improvement loan for a property that had been gifted to him and that he submitted the application on March 28, 2017. This testimony does not materially conflict with Sackett's testimony regarding what Marzolf told him. Substantial evidence supports this finding.

Marzolf next challenges finding of fact 14. This challenged finding of fact states:

11

14. During the week of March 13, 2017, MARZOLF told SACKETT that he needed a quit claim deed for the farm property in order to obtain the bank loan for the purchase. SACKETT was clearly eager to assist MARZOLF as he wanted the sale concluded. SACKETT agreed to give MARZOLF a quit claim deed but not for the purpose of a gift or to change the terms of the sale.

Marzolf contends that Sackett's testimony regarding the need to show a quit claim deed to the bank to obtain a $35,000 down payment loan was not credible, particularly in light of Harrison's testimony that Marzolf applied for a $150,000 home improvement loan. Again, we defer to the trial court's findings regarding the parties' credibility. Harrison's testimony regarding what Marzolf told her is of no consequence in this regard.

Marzolf next challenges finding of fact 13. This challenged finding of fact states:

13. During the week of March 13, 2017, MARZOLF talked to SACKETT on the phone each day and told him of his efforts at Columbia Bank in Snohomish to obtain financing to purchase the property. During that time, neighbor Dr. Arthur Castagno visited daily with SACKETT, observed SACKETT on the phone with MARZOLF on several occasions and confirmed that SACKETT gave him a day by day description as to what was happening with the farm sale to MARZOLF.

Marzolf argues that the record lacks substantial evidence to support a finding that Marzolf spoke to Sackett about conversations with his bank during the week of March 13, 2017. Again, this is an issue of credibility. For the same reasons discussed above, we reject Marzolf's contention.

Marzolf also contends that substantial evidence does not support a finding that Sackett spoke with Castagno about the terms of a property sale to Marzolf, as opposed to some other individual. Marzolf is correct that the trial court

12

sustained his objection to Castagno's testimony regarding the identity of the person Sackett was speaking to on the phone. However, when viewed in light of the testimony of Sackett, it is reasonable to infer that Marzolf was the person on the phone seeking to purchase the farm during that time frame. This finding of fact is supported by substantial evidence.

Marzolf next challenges finding of fact 20. This challenged finding of fact states:

> 20. On March 19, 2017, MARZOLF contacted SACKETT and told him he was not going to pay for the farm property, that he now held the deed and he now owned the farm property. This communication led to an immediate and continuing objection by SACKETT.

Marzolf contends that there is no evidence in the record that Marzolf called Sackett on March 19, 2017, or that he reneged on an alleged unwritten promise to pay for the farm. This is an issue of credibility that we will not review on appeal.

Marzolf next challenges finding of fact 24. This challenged finding of fact states:

> 24. At the time of the execution of the quit claim deed, SACKETT did not think he needed independent advice because he implicitly trusted MARZOLF.

Marzolf contends that this finding is unsupported by substantial evidence because there is no testimony from Sackett or any other witness that but for his trust in Marzolf, Sackett would have sought independent advice before signing the quit claim deed. However, as discussed above, substantial evidence

supports the finding that Sackett's actions were motivated by his long-standing close relationship with Marzolf.

Marzolf next challenges finding of fact 10. This challenged finding of fact states:

> 10. MARZOLF told SACKETT'S friend, Earl Groendyk, in January 2017 that he was trying to buy the farm property.

Marzolf argues that Groendyk's testimony that he was trying to buy the farm in January 2017 conflicts with Sackett's testimony that they started discussing the matter in March 2017. But Sackett's testimony revolved around the parties' negotiations regarding specific terms for the sale, not the general topic of buying the farm. The testimony does not conflict. Substantial evidence supports this finding.

Lastly, Marzolf challenges conclusions of law 2, 3, 4, and 5. These challenged conclusions of law state:

> 2. SACKETT has established by clear, cogent and convincing evidence that he never intended to make a gift of the farm property to MARZOLF. SACKETT executed the quit claim deed on March 17, 2017, solely for the purpose of assisting MARZOLF in obtaining financing for the purchase of the farm property. There was no donative intent and no valid gift.
>
> 3. SACKETT has established by clear, cogent and convincing evidence the quit claim deed to MARZOLF was executed on March 17, 2017 as a result of undue influence exerted by MARZOLF upon SACKETT.
>
> 4. The March 17, 2017, quit claim deed recorded under Snohomish County Auditor's File No.201703170489 is not valid and should be set aside and voided.
>
> 5. Title to the farm property as legally described in Exhibit A should be quieted in SACKETT.

14

Substantial evidence supports the trial court's conclusion that clear, cogent, and convincing evidence establishes that Sackett "never intended to make a gift of the farm property to MARZOLF." A valid gift requires an intention of the donor to give. In re Marriage of Zier, 136 Wn. App. 40, 47, 147 P.3d 624 (2006). Here, Sackett executed the quit claim deed solely to allow Marzolf to obtain a down payment to purchase the farm. He had been attempting to sell the farm to friends and neighbors on the same terms as he offered to Marzolf since at least 2010. The farm was an important asset that Sackett intended to liquidate to fund charitable donations via his estate plan. Sackett was known as a frugal man who would not have given away the farm. And Sackett immediately and continuously objected when he discovered that Marzolf had decided not to pay.

Substantial evidence also supports the trial court's conclusion that clear, cogent, and convincing evidence establishes "the quit claim deed to MARZOLF was executed . . . as a result of undue influence exerted by MARZOLF upon SACKETT." The Restatement (Second) of Contracts defines undue influence as "'unfair persuasion of a party who is under the domination of the person exercising the persuasion or who by virtue of the relation between them is justified in assuming that that person will not act in a manner inconsistent with his welfare.'" Estates of Jones, 170 Wn. App. at 606 (quoting RESTATEMENT (SECOND) OF CONTRACTS § 177(1) (AM. LAW INST. 1979)). Factors that give rise to a suspicion of undue influence include a confidential or fiduciary relationship between the parties, the donee's active participation in the transaction, and whether the donee received an unnaturally large part of the estate. Peters v.

*Skalman*, 27 Wn. App. 247, 255, 617 P.2d 448 (1980). Other factors include the age and mental and physical health of the donor, the nature of the relationship between the parties, the naturalness of the gift, and the opportunity for exerting undue influence. *Kitsap Bank v. Denley*, 177 Wn. App. 559, 571, 312 P.3d 711 (2013).

Here, the parties were not in a confidential or fiduciary relationship. But Marzolf actively participated in the transaction, which gave him a large portion of Sackett's estate. This is particularly unnatural given that Sackett's estate plan provided that the bulk of his estate would go to charity, not to individuals. It is uncontroverted that the parties had a close relationship. Sackett thought of Marzolf as a son, and trusted him implicitly. Sackett is an elderly man who lives alone. His mental faculties were intact, but at the time the quit claim deed was executed, he had just gotten out of the hospital after breaking his hip and was dependent on others for care and companionship, including Marzolf. These factors provided Marzolf an opportunity to exert undue influence by telling Sackett he needed a quit claim deed to get a loan to purchase the farm property.

In sum, the trial court did not err in voiding the quit claim deed and quieting title in the property to Sackett.

Affirmed.

We concur:

_____
Dwyer, J.

_____
Leach, J.

_____
Mann, ACJ